GLENN & ROWE V. E. D. SEELEY ET AL.

Decided March 23, 1901.

**1.—Mortgage—Future Advances.**

A mortgage may secure a debt in a stated sum, recited as evidence by a note for that amount (which, through oversight, was never actually executed), such debt consisting in part of an account then owing, and the remainder being intended to cover advances thereafter to be made to the mortgagor, and the mortgage will create a valid lien although there be no statement therein that any part of the indebtedness is for future advances.

**2.—Same—Consideration—Pleading and Proof—Parol Evidence.**

Parol evidence is admissible to show the true consideration of the mortgage, the intention to secure future advances, and to account for the nonexistence of the note, although the pleadings contain no allegation of fraud or mistake in the execution of the mortgage.

**3.—Same—Description of Property.**

Where the property is described in a mortgage as lots 7 and 8 in block 20 of the town of Mount Calm, in Hill County, Texas, as shown by the plat of said town of record in Hillsboro, to which reference is made for a more particular description, this is a sufficiently definite description to authorize a foreclosure.

Appeal from Hill. Tried below before Hon. J. M. Hall.

*D. M. Short, A. G. Walker,* and *A. C. Prendergast,* for appellants.

*A. P. McKinnon* and *L. A. Carlton,* for appellees.

TEMPLETON, ASSOCIATE JUSTICE.—On September 21, 1896, E. D. Seeley executed and delivered to J. P. Lewis, trustee for John A. Glenn, a mortgage upon two lots of land situated in Mount Calm, in Hill County. It was recited in the mortgage that Seeley was indebted to Glenn in the sum of $300 as evidenced by note of Seeley to Glenn for that sum, of even date with the mortgage, bearing 10 per cent interest from date, containing the usual attorney's fee clause, and due on November 1, 1897, and it was stated that the mortgage was given to secure said indebtedness. At that time Seeley owed Glenn $128.75 on account for goods sold and money advanced, but was not otherwise indebted to him, and no note was then given. Shortly thereafter, a note, similar in terms to the one described in the mortgage, was drawn, and Seeley started to

sign it, but his attention was called away and it was never signed, the fact being overlooked. After the mortgage was given, Glenn continued to advance goods and money to Seeley, the amount advanced between that time and January 30, 1897, being $323.10. During the same period Seeley paid to Glenn $228.50, leaving a balance due on January 30, 1897, of $223.35. J. F. Rowe had in the meantime become a partner with Glenn and interested in the account. Seeley owed Glenn and Rowe the further sum of $23.30 on account made by him with Rowe & Cochran, and on January 30, 1898, he executed and delivered to Glenn & Rowe his note for $246.65, being the amount of said account and the amount he owed Glenn. The note not being paid when it matured, Glenn & Rowe brought this suit against Seeley and a person to whom he had sold the mortgaged lands. The facts above stated were alleged in their petition, and they further pleaded that, at the time of the execution of the mortgage, it was contemplated and agreed between Glenn and Seeley that Glenn should continue to advance to Seeley goods and cash as demanded until his account amounted to $300; that the mortgage was given to secure the contemplated advances and the sum then owing on account; that the note for $300, described in the mortgage, was to be given to cover such account and advances. It was also alleged that the advances made between the date of the mortgage and time of the giving of the note for $246.65 were made in reliance on the said agreement and mortgage and in good faith. The trial court held that the plaintiffs had no lien on the lands in question, and, as the amount of their debt was below the jurisdiction of the district court, their suit in that respect was dismissed. This appeal is prosecuted from said judgment.

On the trial the appellants offered to prove by Judge Marshall Surratt the following facts: "I drew the trust deed in my office in the city of Waco, at the time it bears date. Mr. Seeley came in my office and stated to me, in substance, that he had been dealing with John A. Glenn, and was then indebted to him in some amount, I do not recall just what, and he had made an arrangement with Glenn for future dealing, by which Glenn was to make further advances to him, during that and the following year, and that he desired to secure Glenn for what he then owed him and the future advances, by a lien upon the two lots described in the trust deed, and he wished me to draw the papers. I discussed the matter of drawing the security with him, and the probable amount of future advances and when he was to pay same, and told him that he must name some amount as a limit, and also a limit of time of payment, and he stated that he did not expect to be at any time indebted to Glenn more than about $300, and I think stated that he expected to pay all of it before November 1, 1897, but that said date would give him at all events ample time. I know he finally told me to draw it so as to secure a note for $300 due November 1, 1897, and I did so. I do not remember whether he had me to draw the note or not. I explained to him that he could execute a note and trust deed in this way to Mr. Glenn, and deliver to him, as collateral to secure any amount up to $300 which he

should be indebted to Glenn, up to the maturity of the note, whether by note or open account, if taken as a collateral to the actual indebtedness, whatever it might be, and he stated that was what he wanted to do; and the trust deed was so prepared by his instructions, and, as he stated, for that purpose, and he and his wife executed and acknowledged it there, and carried it away. My recollection is that the $300 note was a suggestion of mine, to be deposited with the trust deed as collateral for whatever indebtedness should really exist, and that Mr. Seeley adopted this suggestion. The conversation was brought about by Mr. Seeley coming to me to prepare security for Mr. Glenn, as before stated."

Whereupon the appellees objected to the introduction of said testimony upon the following grounds: (1) Said testimony tends to explain what occurred in connection with the execution of the deed of trust, and it speaks for itself. (2) Because the contract or agreement with the parties was reduced to writing, and what occurred is not admissible under the general rules. (3) Because there is no allegation of fraud or mistake in the drawing of the deed of trust, and the testimony is to show that the deed of trust was not to secure the debt as evidenced by the note, but for the future advances to be made. The objections were sustained by the court and the testimony excluded.

Appellants also offered to prove by the witnesses, J. P. Lewis and John A. Glenn, respectively and separately, that at the time said trust deed was executed and delivered it was understood and agreed between said Glenn and Ed D. Seeley and wife that the trust deed was to secure what said Seeleys owed Glenn, amounting to $128.75, and for what goods, wares, and merchandise Glenn should from that time to November 1, 1897, sell and deliver to Seeley, and what money he should at that time advance to him, and that it was estimated between the parties to the trust deed at the time, that the sum of $300 would cover all of these amounts; and that Glenn, after the execution of the trust deed, and upon the security thereof, from time to time from the date thereof to November 1, 1897, sold to said Seeley goods, wares, and merchandise and advanced to him money, as shown by the account introduced in evidence in that cause; that Glenn would not have sold Seeley goods, etc., nor advanced to him the said money unless said trust deed had been executed, and that the note for $300 called for in the trust deed was to be made up of said amounts, to wit, the $128.75, and for what goods, wares, merchandise, and money Glenn should sell and advance to Seeley during said time, and that that was the debts that the said trust deed secured, and that was the way the amount of the $300 was arrived at. To the introduction of which evidence the appellees objected on the ground that there is no allegation in the pleading of fraud or mistake in drawing the deed of trust, and there being no ambiguity in the deed of trust, it was incompetent to prove a contemporaneous agreement by oral testimony not incorporated in the deed of trust; which objections were sustained by the court and said testimony excluded.

We are of opinion that the evidence was admissible. In Jones on

Mortgages, sections 374-376-384, the law is stated thus: "It is not necessary that the mortgage should express on its face that it is given to secure future advances. It may be given for a specific sum, and it will then be security for a debt to that amount. * * * The sum expressed by the mortgage may cover a present indebtedness as well as future advances, and it is not necessary that the one should be separated from the other on the face of the mortgage. * * * A mortgage which in terms secures a promissory note for a specified amount may actually be intended to secure future advances to that amount. * * * The omission to state on the face of the mortgage the time when the first advances are to be made is not material. It is sufficient that they are to be made from time to time as the mortgagor may desire during a specified period. The amounts of the several advances and the times when they were actually made and the object of the mortgage may be shown by extrinsic proof, for in such case the proof does not contradict the mortgage or alter its legal operation and effect in any way. Although the deed purports to be in consideration of a definite sum in hand paid at the time, it may be shown by parol evidence that the deed was made to secure advances made and to be made to that extent. * * * Parol evidence is admissible to show the true character of a mortgage and for what purpose and what consideration it was given. Although it is for a definite sum and secures the payment of notes for definite amounts, it may be shown that it is simply one of indemnity." * * *

This language is quoted and approved in Banking Company v. Leonard, 90 Kentucky, 106, 13 Southwestern Reporter, 521, where the authorities bearing on the question are collated and reviewed. See also Frieberg v. Magale, 70 Texas, 119. The rule that the terms of a written contract can not be varied by parol has no application. The mortgage before us did not express all, but only a part, of the terms of the contract, hence there can be no variance. Besides, parol evidence is always admissible to show the real consideration of a contract, even when the same is different from the expressed consideration. Johnson v. Elwen, 59 S. W. Rep., 253. It has been frequently held that it is competent to prove by parol that an instrument in form an absolute conveyance was in fact intended as a mortgage. It was not necessary for the appellants to allege and prove that all the purposes for which the mortgage was given were not fully stated in the mortgage because of some fraud or mistake. There was no fraud or mistake. The parties did exactly what they intended to do, except that, by accident, the note was not executed. The failure to give the note could not affect the intention of the parties to secure the debt. The mortgage having been executed with intention to secure the debt, the appellants, if the facts alleged and offered to be proved by them are true, have a valid lien on the lots in controversy for the debt intended to be secured by the mortgage which is still unpaid. The subsequent change in the form of the evidence of the debt is immaterial. The lien, of course, will not be extended to include any debt not intended at the time of the execution of the mortgage to be covered by it.

The lots were thus described in the mortgage: "All that certain land situated in Hill County, State of Texas, and described as follows: Lots seven (7) and eight (8) in block twenty (20) in the town of Mount Calm, as shown by the map or plat of said town now of record in Hillsboro, to which reference is here made for a more particular description." This description is sufficiently definite, and a foreclosure can not be denied on the ground of uncertainty of description.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*