**TEXAS CO. et al. v. TUCKER et al.**
No. 13882.

Court of Civil Appeals of Texas.
Fort Worth.
May 5, 1939.

Rehearing Denied June 16, 1939.

H. S. Garrett and B. E. Dowdy, both of Fort Worth, for appellant Texas Co.

Wm. J. Fanning, of Sulphur Springs, for appellant Dozier Durham.

C. C. McKinney, of Cooper, and Jackson & Stell, of Sulphur Springs, for appellees.

SPEER, Justice.

In a motion for rehearing filed by Texas Company and Dozier Durham, our attention has been called to a misunderstanding of the record by us, as expressed in the original opinion in this case. They are correct and we take full responsibility for the error made. The transcript contained

rather lengthy amended answers by the appellants, and also second amended answers by each, the latter being subsequent to amended pleadings by the plaintiff. The second amended answers appeared identical with those previously filed, but, in fact, they contained an additional paragraph essential to their defense in this case, which we improvidently overlooked.

We have withdrawn the original opinion, and set aside the judgments originally entered in the main case and on motion for rehearing, and now substitute the following opinion as our conclusions and disposition of the appeal:

T. J. Tucker sued Texas Company, a corporation, Dozier Durham and others, whose names need not be given here, in statutory trespass to try title for 20 acres of land in Hopkins County, a part of the R. D. Gregg Survey. The land was fully described in the pleadings and will not be repeated. No jury having been demanded, the trial was to the court. Judgment was entered for plaintiff, Tucker, against all defendants, and the two above named defendants perfected this appeal to the Texarkana Court of Civil Appeals, but under an equalization order by the Supreme Court, is before us for review.

We believe the judgment was a proper one, and will show our reasons for having reached this conclusion. For convenience, we will refer to plaintiff, Tucker, as appellee, and to defendants, Texas Company and Dozier Durham, as appellants.

Appellee's petition was in the usual form of trespass to try title, with further pleas of limitation for three, five, ten and twenty-five years, with appropriate allegations of payment of taxes in such instances as are requisite to limitation.

Appellants answered separately with general denials, not guilty and similar pleas of limitations to those plead by appellees.

They specially plead in denial of appellee's right of title by limitation, that appellants held title under and through Mrs. Josie Morris, who had been insane continuously since prior to 1906 up until and including 1935, when they acquired title by a conveyance from her guardian; that appellee's plea of limitation and any evidence thereunder would not support a judgment in his behalf.

There were no findings of facts and conclusions of law requested of or found by the court. The statement of facts pre-

pared and filed consists largely of the various instruments relied upon by the parties in support of their respective claimed titles. In fact, there are few controverted matters of fact disclosed by the evidence.

There are two branches of apparent title to the land in controversy, each of which emanates from I. M. Dawson. It may be said that he is the common source of title, in the early part of the year 1900.

The evidence relied upon by the appellee, Tucker, to complete his chain of title from the common source, as reflected by the record, consists of the following instruments: Deed of Trust lien on 701⅓ acres of land, including the tract in controversy, by Dawson to Carothers, trustee, dated May 29th, 1900, to secure the payment of $3,933.25 to City National Bank of Sulphur Springs, due January 1st, 1901; deed of trust between the same parties on the same land, dated January 17th, 1903, to secure same bank in the payment of $5,525, due January 1st, 1904; deed of trust between same parties and on the same land, dated January 6th, 1904, to secure the same bank in payment of $7,000, due July 1st, 1904; trustee's deed from Carothers, trustee, to City National Bank of Sulphur Springs (shown to be a sale by the trustee under last mentioned deed of trust), dated April 3rd, 1906; deed from the last named bank to Pierce; deed from Pierce to Cannon; deed from Cannon to appellee, Tucker, dated January 31st, 1923. All of said instruments were duly filed and recorded. An officer of the named bank testified that each of the successive deeds of trust, and the indebtedness secured by them, were renewals and extensions of maturities of the original indebtedness secured by the first deed of trust, dated May 29th, 1900; that no part of the debt was ever paid, except by the several renewals and extensions. The testimony of this witness was admitted over the objections of the appellants, to which actions exceptions were taken and the ruling of the court forms the basis of assignments of error, which we will discuss later in this opinion.

Relating to his pleas of limitation, appellee, Tucker, testified that he went into possession of the land in controversy immediately upon purchasing it from Cannon, in 1923, and that his possession continued under a claim of title by him against all persons; that his title and possession was never questioned, so far as he knew, by any

one during the period between his purchase in 1923 until January 1st, 1936, just prior to the time he instituted this suit; that he had paid the taxes on the land during the period of his ownership. Appellee being a lawyer, made a rather broad attempt to cover every phase of limitation, but upon objection by defendants, was required to detail the nature of his possession and ownership during the period; he said he had possessed the land in the same manner he had held other lands; that while the land was unimproved, he had leased it, sold royalties from· it and re-leased it; that the tract is enclosed with larger tracts, in the pasture of Carl Stephenson; that on January 17th, 1928, he gave a deed of trust on the land to secure a debt; the oil lease given by him was of date July 15th, 1932. Carl Stephenson testified that he and his father fenced their land adjacent to the 20 acre tract in 1913 or 1914, when Pierce owned the 20 acres; that they joined their north and south line fences to that of Pierce's and the fence between the two tracts for many years had been bad and stock passed through it often; that up until they quit cultivating parts of their own land, they tried to keep the fences up, but of late years they had not cultivated any part of their tract and had paid little attention to the cross fences.

The chain of title running from Dawson, the common source, under which appellants claim, consisted of a deed from Dawson to J. M. Morris, dated December 11th, 1900; Morris died intestate early in 1906, without children or their descendants, leaving surviving him his wife, Josie Morris, a person of unsound mind; deed from Brymer, as guardian of the estate of Josie Morris (non compos mentis), to Dozier Durham (one of the appellants), dated November 2nd, 1935; and an oil and gas lease from Durham to appellant, Texas Company, of date January 23rd, 1936.

J. A. Brymer (guardian of Josie Morris) testified as to his possession and claim of the land for his ward, that J. M. Morris died in 1906, intestate, left no children, and that his wife, Josie Morris, survived him; that she was then of unsound mind and had been in the same condition continuously since that time; that she was at the date of the trial and had been for many years an inmate of the State Institution at Terrell, Texas; that at all times, since his appointment as guardian, he had been in possession of the land and claimed it as the property of his ward. (The record does not disclose the date of Brymer's appointment as guardian.) That no one ever tried to dispossess him; that he paid the taxes on the land; that prior to a partition he paid taxes on 93 acres owned by his ward; he did not remember to have paid any back taxes, but said the record would show whether or not he had paid on the 20 acres in addition to the 93 acres. He further testified that in 1914 he gave Stephenson permission to tie his fence onto the fence enclosing the 20 acres; that he, as guardian, owns no other lands belonging to his ward adjacent to the 20 acre tract.

The witness said that he had nothing to do with the land until in 1912, since which time he had claimed it for his ward, Mrs. Josie Morris, and paid taxes on it. He said he had never received any rents or other revenues from the land and that he had never pastured it or used it in any way. That Judge Tucker, at one time, asked him what he would take for the land (the date of this inquiry is not given); that no deal was made between them.

Dozier Durham (one of the appellants) testified that he was a son-in-law of the guardian, Brymer, from whom he purchased the land in 1935; that he knew in 1932 that other persons were claiming it; that Judge Tucker was "claiming a smoke over it in 1932." That he bought the 20 acre tract, along with a 93 acre tract, and paid Brymer $465 for the two tracts.

We think the foregoing references to the evidence are sufficient to show the nature of the claims of title asserted by the respective parties.

As above indicated, the judgment entered was that appellee, Tucker, recover the title from appellants, Durham and Texas Company. The uncontroverted testimony shows that the court's judgment could not have been based on appellee's plea of the several statutes of limitation for the reason such title as J. M. Morris acquired was inherited at his death in the early part of 1906 by his wife, Mrs. Josie Morris, a person of unsound mind. That interest, if any, remained in her during the whole of the time until her guardian conveyed it to appellant, Durham, in 1935. Mrs. Morris was in the State Institution for the insane at the time of the trial, and had been there for many years past. Limitation would not run in appellant's favor against Mrs. Morris. Art. 5535, R.C.S.

Appellants present this appeal and ask for a reversal of the judgment of the trial court, because: (1) The court erred in permitting W. W. Wood, an officer of the City National Bank of Sulphur Springs, to testify that the consideration for each of the subsequent deeds of trust by Dawson to the Bank consisted of the same indebtedness evidenced and secured by the original deed of trust, dated May 29th, 1900; (2) because a sale by the trustee under the last deed of trust, dated January 6th, 1904, did not pass the title to the land in view of a prior conveyance by Dawson to J. M. Morris, on December 11th, 1900, under which conveyance appellants hold; (3) because appellants are innocent purchasers for value, that is, without knowledge that the deed of trust under which the land was sold, secured the debt which existed at the time the conveyance was made to Morris, and that the court erred in rendering judgment for appellee against them; (4) because the debt for which the land was sold under the deed of trust was a usurious transaction, that no title passed by virtue of the sale, and therefore the bank, under whom appellee claims, acquired nothing by the purchase.

A proposition is presented, challenging the acts of the trial court in hearing the oral testimony regarding the consideration for the deed of trust, under which sale was made, because such oral testimony had the effect of altering and changing the terms and conditions, as well as the force and effect of the written instrument; in short, violated the parol evidence rule; that it was an attempt to convey title to real estate by a means not provided by law.

We think a determination of the point raised by the last mentioned proposition will be decisive of the priority of title, as presented by the respective chains or branches under which each of the parties claims.

We have previously shown that Dawson owed the bank a debt and gave his deed of trust on the land in controversy on May 29th, 1900, to secure that debt due January 1st, 1901. The deed of trust was timely filed and recorded. Dawson thereafter executed and delivered subsequent deeds of trust on the same land to secure the bank, the last one being dated January 6th, 1904. The subsequent instruments made no mention of the original note, but in each instance described a note for a larger amount. The sale was made by the trustee under the terms of the last instrument. The original debt never at any time became barred by the statute of limitation, before a renewal and extension was made. The testimony complained of was to the effect that each of those subsequent instruments was in consideration of the renewal and extension of the original debt and lien. Both the debt and lien existed at the time Dawson conveyed the land to Morris, on December 11th, 1900, and it is under this conveyance that appellants claim title. That deed was in regular form and recited a cash consideration of $60 paid. Nothing is said about the outstanding lien previously given by Dawson to the bank. The deed of trust was on record and Morris was chargeable with notice of it; he then purchased subject to the rights of the bank. This carried with it knowledge that Dawson and the bank could by agreement, before the debt became barred by limitation, renew and extend its maturity. If Morris had assumed the payment of the bank debt, instead of taking the land subject to the debt and lien, a different question would have arisen; but this was not done. It is well settled by the decisions of our courts that in cases like this, the true consideration in an instrument may be shown by parol testimony, and when thus shown, the rule applicable to varying the terms of a written instrument by parol evidence is not violated. 17 Tex.Jur., p. 851, sect. 385. See also Foster v. Wright, Tex.Civ. App., 217 S.W. 1090; Street v. Robertson, 28 Tex.Civ.App. 222, 66 S.W. 1120, writ refused; Callaway v. Albin, 114 Tex. 5, 261 S.W. 372; Barber v. Herring, Tex. Com.App., 229 S.W. 472; Glenn v. Seeley, 25 Tex.Civ.App. 523, 61 S.W. 959. There was no error in the admission of the testimony.

Under appropriate assignments of error, appellants argue that because the sale by the trustee, under which appellee claims title, was made in virtue of the deed of trust given in 1904, which made no reference to the original debt or lien, and because appellants' rights accrued under a previous deed, such rights as were acquired at the trustee's sale were inferior to those acquired by Morris, appellants' predecessor in title.

At the time of the transactions here in controversy, Article 5522, R.C.S., had not been passed, and therefore the

rule there announced has no application here. Discussing a similar proposition, wherein the rule, as it existed prior to the enactment of Article 5522, supra, in T. A. Hill State Bank v. Schindler, Tex.Civ. App., 33 S.W.2d 833, at page 837, writ refused, the court said: "it was settled [prior to Art. 5522] by the decisions of our Supreme and appellate courts that any renewal of the note made before it became barred which was valid as between the parties preserved the lien until the expiration of four years after the maturity of the debt fixed by the renewal, except as against subsequent innocent purchasers and lienholders."

It cannot be seriously questioned that Dawson and the bank had a legal right to renew and extend the obligation owing by Dawson if done before it was barred by limitation. Morris was chargeable with notice that this could be done, when he took a deed subject to the debt and lien. The renewals and extensions were each promptly placed of record, thereby giving notice to the public of their provisions.

Somewhat similar to this case is that of R. B. Templeman & Son v. Kempner, Tex. Civ.App., 223 S.W. 293, writ refused. In that case, the validity and priority of liens were involved. The decision was rendered subsequent to the passage of Article 5695, as it appears now in Article 5522, Vernon's Civ.St. It was there said (223 S.W. page 295): "As between Baker and appellants [applicable to Dawson and the bank in this case] the lien given by the original instrument was preserved by each of the subsequent deeds of trust, and, these instruments being all properly recorded, the lien must be held valid against any subsequent purchaser. This was the well-settled rule prior to the adoption of the statute above quoted." (Then article 5695). The opinion further indicates that the renewals and extensions referred to the original debt and lien, and thereby showed the consideration for the new obligations. If we are correct in our interpretation of the rule previously discussed in this opinion, that such consideration may be shown by parol testimony, then the principle discussed is applicable here. The opinion further lays down the rule in this language: "As a subsequent purchaser charged with notice of appellants' [the bank in the instant case] lien by the record of their deed of trust, appellee [Morris the subsequent purchaser] is bound by any valid renewal and extension of the note between Baker [Dawson] and appellants [Morris]. This was the holding of this court in the recent case of Allison-Richey Gulf Coast Home Co. v. Welder, [Tex. Civ.App.], 220 S.W. 392 * * * *."

In Flewellen v. Cochran, 19 Tex.Civ. App. 499, 48 S.W. 39, writ refused, decided in 1898, in discussing the rights of parties as affected by liens renewed from time to time, it was said, 19 Tex.Civ.App. 499, 48 S.W. at page 40: "But the debtor can prevent the debt from becoming barred and the lien from becoming thus lost by acknowledgment of the debt before the time necessary to complete the bar has passed, even though he has transferred his right to the property charged with the lien. In such a case the purchaser takes the property while incumbered, and nothing ever occurs, as in cases where the lien is once lost by the operation of limitation upon the debt, to invest him with a defense against it." (Citing authorities.)

Appellants rely upon the case of Platte v. Securities Investment Co., Tex.Com. App., 55 S.W.2d 551, in support of their contention that because the deed of trust from Dawson to the bank, upon its face, secured a described debt, and the sale being under one between the same parties, dated January 6th, 1904, and appellants having acquired their rights under Morris, who took a deed prior to the last mentioned deed of trust, that title was superior to the one acquired at the sale under the deed of trust. As we read the Platte case, supra, we do not think it supports the contention made. In that case it clearly appears that the Securities Company procured and fixed an attachment lien against the land on September 26th, 1925. Miss Platte was at that time negotiating for the purchase of an indebtedness secured by a prior lien on the land. She did not perfect this deal until October 14th, 1925, at which time she paid the money, took releases of the liens purchased by her, and a deed of trust lien on the property; the releases and deed of trust were duly filed for record. At that time the Securities Company had fixed a lien on such interest as the owner had in the property. Subsequently Miss Platte sold the land out under her deed of trust. It was held that the attachment lien was prior to the deed of trust lien under which the property was sold. The distinction is drawn in the opinion between the original lien to which Miss Platte

was by equity subrogated and that acquired at the time of the deed of trust, and it is said that no effort was made to foreclose the original lien to which she may have been subrogated, but that she relied upon the lien made by the deed of trust, which was inferior to that acquired by the Securities Company under their attachment lien. In this, we think, lies the distinction between that and the case at bar.

We have carefully read the case of Herbert v. Denman, Tex.Civ.App., 44 S. W.2d 441, also cited by appellants, and having concluded that it is not controlling in a case where the facts are as those before us, no useful purpose could be served in its analysis. The assignments raising the points discussed are overruled.

Error is assigned to the entering of judgment for appellee, because it is claimed that appellants are shown by the record to be innocent purchasers for good, valuable and adequate consideration. This contention cannot be sustained, because appellee's chain of title from the common source is shown by the records of deeds and deeds of trust in Hopkins County, where the land is situated. Article 6627, R.C.S. 1925. Appellants took no better title, insofar as the record is concerned, than that acquired by J. M. Morris, when the land was deeded to him by Dawson, in December, 1900. At that time there was a valid and subsisting deed of trust lien on the land in favor of the City National Bank of Sulphur Springs, duly recorded, of which he had, at least, constructive notice. The debt secured by that lien was kept alive by the subsequent renewals and extensions and eventually sold out by the trustee, completing the chain of title in appellee; these proceedings were apparent in the record of titles and Morris was charged with having knowledge of them. As stated in Flewellen v. Cochran, supra, so long as the original debt did not become barred by limitations, Dawson had a legal right to renew and extend the maturity of the debt and lien, even though he had previously conveyed the land to Morris. The title acquired by Morris under his deed from Dawson was inferior to that conferred by the outstanding lien to the bank, and Morris was chargeable with notice of that lien and all the legal rights held by the parties thereunder; this included the right of renewal and extension of maturity.

If appellants should base their claim of innocent purchaser upon the fact that the record title did not disclose all of the legal rights conferred under the deeds of trust, then, as we have seen, appellant, Durham, under whom Texas Company claims an oil and gas lease, testified upon the trial that he knew in 1932 that other persons were claiming the land and at that time Judge Tucker (appellee) told him something of the "smoke" on the title. Durham thereafter purchased the land from his father-in-law, Brymer, as guardian of the estate of Mrs. Morris. The actual knowledge of the circumstances surrounding the title, possessed by Durham, were sufficient to put him upon inquiry, which, if pursued, would have disclosed the facts to him. We cannot sustain the plea of innocent purchaser, thus interposed.

A point is raised by appellants' 4th and 5th assignments of error, summarized in a proposition to the effect that appellee should not have been awarded a judgment for title in this case, because certain links in the chain of title consist of deeds of trust, the original of which was claimed to have been renewed and extended by a later one, it being usurious and unenforceable. That appellee's superior title depended upon the validity of a sale made by the trustee under the usurious instrument and was, for that reason, a nullity.

Many authorities are cited by appellants which condemn usurious contracts in no uncertain terms. Following the spirit of the policy of our law to prevent usury and punish those who would extort illegal interest and thereby invade the realm of legitimate transactions, the brief quotes a universally announced principle from the Supreme Court case of Queen Insurance Co. v. State, 86 Tex. 250, 24 S.W. 397, 406, 22 L.R.A. 483, in which it was said: "The rule is to leave the parties as they have left themselves." An investigation of the case from which the quotation is taken discloses that it was a suit instituted by the State against an "Insurance Association" organized for the purpose of violating the anti-trust laws of the State and the quotation was taken from an expression used in connection with a discussion of the nature of contracts made with such an organization.

Again they cite the case of Woolsey v. Panhandle Refining Co., Tex.Sup., 116 S.W.2d 675, 678, which is a Workmen's Compensation case, in which the

validity of a settlement made with the injured employee, under the provisions of the Act, was the point under discussion. In denouncing the contract, the court said: "In line with the universally accepted rule, this court has repeatedly refused to enforce contracts ,which are either expressly or impliedly prohibited by statutes or by public policy." A lengthy argument of about twenty pages in the brief is made, citing many such cases, and applying them to the alleged usurious nature of the instruments referred to in this case. This court has the same antipathy for usurious contracts as that expressed by appellant's counsel, yet we cannot go so far as to say that a contract as a whole is void because it provides for usurious interest. Our statutory provisions, which control usurious contracts, are embraced mainly in Article 5071, R.C.S. Under this statute, the principal debt is in no way affected by usury, but the whole of the interest charged is null and void. A case could arise where it would be important to determine between litigants claiming senior and junior liens, what part of the former debt was secured and collectible, and what part void, to the end that the latter could have the option to redeem the security by paying the first lien debt and thereafter subject the property to the junior lien debt. But that question has not arisen in this case. The contention is that because the lien under which the sale of the land was made, secured a debt, a part of which was usury, the title did not pass by the sale. We think this an erroneous deduction.

The rule of law in this State seems settled that after a sale of real estate has been made, under the terms of a deed of trust, and the debt is thereby paid, it is too late to thereafter attempt to set the sale aside for vice or frailties in the obligation for which the security was given, and the sale made to satisfy. This is especially true where, as in this case, a part of the debt for which the security was given was unquestionably valid, even if another portion consisted of void usurious interest. A sale under the provisions of a deed of trust, under such conditions, is not void. Hemphill v. Watson, 60 Tex. 679; State Mortgage Corporation v. Ludwig et al., 121 Tex. 268, 48 S.W.2d 950.

We have not discussed appellants' assignments in the order presented in the briefs, but have examined each carefully, and conclude they should all be overruled.

After withdrawal of our former opinion, in which we misconstrued certain pleadings, and having rewritten our conclusions, as hereinabove expressed, independently of some matters formerly included in our opinion, we believe the judgment of the trial court was correct. It will therefore be affirmed, and the motion for rehearing, as filed, is overruled.