## COUNTISS et al. v. BALDWIN et al.

### No. 10930.

Court of Civil Appeals of Texas.
San Antonio.

April 16, 1941.

Rehearing Denied May 28, 1941.

Ben F. Vaughan, Jr., of Corpus Christi, Dougherty & Dougherty and George P. Morrill, all of Beeville, W. B. Moss, of Sinton, and W. J. Howard, M. P. Pearson, R. Chester Day, Felix A. Raymer, and R. E. Seagler, all of Houston, for appellants.

Keys & Holt and Oscar Spitz, all of Corpus Christi, for appellees.

MURRAY, Justice.

This suit was instituted by Hattie Baldwin, individually and as independent executrix of the will of Jacob C. Baldwin, deceased, F. T. Baldwin, independent executor of the will of Jacob C. Baldwin, deceased, J. C. Baldwin and R. B. Baldwin against H. D. Countiss and wife, Della F. Countiss, Vincent J. Meyer and wife, Margaret V. Meyer, and Humble Oil and Refining Company, a corporation, seeking, in a statutory action of trespass to try title, to recover a one-sixteenth royalty inter-est in the minerals in, on or under a certain 68.16 acres of land out of Section No. 49, of the George H. Paul Subdivision of the Coleman-Fulton Pasture Company's Lands, south of Taft, in San Patricio County, Texas.

Vincent J. Meyer and wife, Margaret V. Meyer, filed a cross-action asserting a one-sixteenth interest in the gas, oil and minerals in, on or under the said 68.16 acres of land.

The trial was to the court without the intervention of a jury and resulted in judgment in favor of the legal representatives and heirs of Jacob C. Baldwin for the one-sixteenth royalty interest sued for, and likewise a recovery by Meyer and wife for the one-sixteenth royalty interest sought by them.

From this judgment the Humble Oil and Refining Company, and H. D. Countiss and wife, Della F. Countiss, have prosecuted this appeal. There is no attempt by this appeal to disturb that part of the judgment decreeing to Vincent J. Meyer and wife, Margaret V. Meyer, the one-sixteenth royalty interest awarded to them.

The facts are largely undisputed and are as follows:

Prior to May 22, 1919, Thos. Kirk, Jr., was the owner of 320 acres of land, which included the 68.16 acres herein involved. On that date Kirk and his wife executed a deed of trust on the 320 acres of land to M. H. Gossett, trustee, securing The Federal Land Bank of Houston, Texas, in the payment of a note for the sum of $5,000. The deed of trust was duly recorded on May 27, 1919.

On January 17, 1920, while the mortgage was in full force and effect, Kirk and wife conveyed to Jacob C. Baldwin all of the oil, gas and other minerals under the 68.16 acres herein involved, reserving to themselves a one-sixteenth royalty interest in said oil, gas and minerals.

Baldwin died testate on November 1, 1921. His will was duly probated and Hattie Baldwin and F. T. Baldwin became the independent executrix and executor, respectively, of his will.

On June 10, 1922, the legal representatives of Jacob C. Baldwin, deceased, conveyed to Humble Oil & Refining Company all the oil, gas and other minerals under said 68.16 acres of land, reciting in such conveyance that Kirk had reserved a one-sixteenth royalty of the oil, gas and other

minerals in his conveyance to Baldwin, and further reciting that they were reserving a one-sixteenth oil royalty.

On September 4, 1925, the Federal Land Bank of Houston made Kirk an additional loan of about $1,600, and took a new note and deed of trust in the sum of $6,000, there being about $4,400 unpaid on the first $5,000 loan. The time of payment of the old loan was extended and made to mature in installments. This new deed of trust was recorded on September 4, 1925.

Default having been made in one of the installments, the land was purportedly sold on February 12, 1935, by a substitute trustee, to Corpus Christi National Farm Loan Association; the purchaser taking subject to the unpaid portion of the $6,000 note.

On February 23, 1935, Corpus Christi National Farm Loan Association conveyed said property to Orville W. Eastland, and on December 27, 1938, Eastland conveyed the same to the appellant, H. D. Countiss.

On March 6, 1935, the Federal Land Bank of Houston, the owner of the $6,000 note, secured by the deed of trust, dated September 4, 1925, transferred the remainder of the indebtedness, amounting to $6,230.40, to H. D. Countiss, together with the deed of trust lien, but recited in the transfer that the note was cancelled. Default having been made, the property was purportedly sold by an attorney-in-fact for a substitute trustee to H. D. Countiss on July 3, 1935, the deed being recorded on August 9, 1935. Later the substitute trustee executed a correction deed, dated April 30, 1937, and filed for record June 17, 1937. Both of these trustee sales are attacked for certain irregularities as will hereafter appear.

On September 26, 1938, Humble Oil & Refining Company quitclaimed all right in the land to H. D. Countiss, and this quitclaim deed was filed for record October 18, 1938.

On September 28, 1938, H. D. Countiss and wife executed to Humble Oil & Refining Company an oil, gas and mineral lease on said 68.16 acres of land. Countiss and wife conveyed a part of their royalty under this lease to Vincent J. Meyer and wife, Margaret V. Meyer.

This suit was first filed in the District Court of San Patricio County, but was later transferred to the District Court of Bee County where it was tried.

Appellants first contend that when the legal representatives of J. C. Baldwin, deceased, conveyed the oil, gas and other minerals in, on or under the 68.16 acres of land they conveyed all the oil, gas and minerals, and that the attempted reservation in the deed of a one-sixteenth royalty interest was ineffective to reserve to the Baldwin estate any royalty interest. The exact contention being that the reservation clause is repugnant to the grant and the general warranty of title found in the deed. We overrule this contention. Mr. Summers in his work on the Law of Oil and Gas, Volume 1, § 134, page 327, states: "In a few cases it has been contended by counsel that where a grantor grants land in fee and in a later clause of the deed excepts from the grant the oil and gas or other minerals, the exception is void, because repugnant to the grant, but the courts refuse to follow this ancient rule of construction, preferring the modern viewpoint to the effect that the all-important consideration in the construction of a deed is the intention of the parties to be gathered from the instrument as a whole (citing Associated Oil Company v. Hart, [Tex.Com.App.], 277 S. W. 1043, Owen v. Associated Oil Company, Civil Appeals, 281 S.W. 607)."

When the instrument is considered from its four corners, it is plain that the Baldwin representatives were conveying the minerals under the 68.16 acres to Countiss, except the one-sixteenth royalty interest retained by Kirk and a one-sixteenth royalty interest which was retained for the benefit of the Baldwin estate.

The royalty interest discussed in Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021, was apparently reserved in very much the same manner in which the Baldwins reserved the royalty interest in the conveyance to Humble Oil and Refining Company. There is nothing inconsistent in conveying all the mineral interest one may own in land and in a separate paragraph reserving a one-sixteenth royalty interest, because a one-sixteenth royalty is something more than a one-sixteenth of the minerals in place. While it is true that a person who owns a one-sixteenth royalty in the minerals under a certain tract of land, for the purposes of taxation is regarded as owning a one-sixteenth of the minerals in place, as was held in Sheffield v. Hogg, supra, he in truth and in fact owns something more. He has a right to have all costs of discovering and producing the oil charged against the mineral interest conveyed, and to have his one-sixteenth royalty delivered to him free of all cost of bringing it to the surface of the

earth. It would seem that the proper way to reserve a royalty is to convey the entire mineral interest which one may own and then reserve the royalty in a separate paragraph.

Appellants next contend that the court erred in admitting in evidence the conversation of Thomas Kirk with O. H. Johnson, Secretary of the Corpus Christi Farm Loan Association, and the correspondence of July, 1923, between O. H. Johnson and the General Attorney of The Federal Land Bank, because by such evidence appellees tried to change and modify the terms of the deed of trust of September 4, 1925.

The testimony of Kirk was to the effect that when he made application to Mr. Johnson, the Secretary of the Corpus Christi National Farm Loan Association, for an increase of his existing loan, he told Mr. Johnson about the deed to Baldwin and Mr. Johnson said that they did not take into consideration the mineral rights as a part of the security, but "that they expected the surface of the land to pay the security." After he had this conversation with Kirk, Johnson wrote to the General Attorney of the Federal Land Bank of Houston, Mr. Rogers, advising him of Kirk's application for an increased loan, and Mr. Rogers replied to the effect that he could see no reason why they should not be able to entertain the application, stating that the mineral rights the bank required was that the applicant should own a one-sixteenth royalty interest. This correspondence occurred between July 23rd and July 31, 1923, more than two years prior to the making of the additional loan and the execution of the deed of trust of 1925. At the time of the correspondence Kirk was asking for an additional loan of $800 or $900; the additional loan finally made in 1925 was in the amount of approximately $1,600. Mr. Rogers testified that the negotiations were begun in 1923, and were continuous from 1923 until 1925, when the additional loan was finally made. Kirk testified that all of the additional loan was spent on improvements upon the land, however, this fact seems to be of no importance.

■ This evidence was offered as tending to show that the 1925 deed of trust was not intended to cover the minerals under the land, or at least was to be regarded as subordinate to the Baldwin mineral deed. The deed of trust of 1925 did not reserve or except the minerals from the lien created by it. Appellants contend that the

extraneous evidence was too remote in point of time, and further that it attempted to vary the terms of the deed of trust. We sustain these contentions. Appellees point out that the deed of trust of 1925 contained the following provision: "For the purpose of further securing said note Mortgagors hereby transfer and assign to The Federal Land Bank of Houston one-half of all the royalties that may be due or that may hereafter become due and payable to Mortgagors or their assigns under any oil, gas or mineral lease that may now be upon said land, until the amount of royalties so paid shall amount to a sufficient sum to pay off and discharge said note; and Mortgagors hereby authorize said Bank to collect and receipt for one-half of all royalties due Mortgagors under any lease now on said land, and apply the same to the payment of said note, and Mortgagors hereby authorize the lessees and assigns under any such lease to pay over to said Bank, one-half of the royalties due or that may become due under any such lease until said note is fully paid off and discharged. It is agreed and understood that a release of this deed of trust shall operate as and be a reassignment of all mineral rights to the Mortgagors or their assigns."—and contend that such provision rendered it ambiguous as to whether or not the minerals were included in the deed of trust. We cannot agree with this contention. The deed of trust described the entire fee, with no exceptions or reservations, and this clause simply gave the Land Bank a right to one-half of any royalties that might be retained in any oil lease that might be on the land. For the reasons pointed out, the evidence was inadmissible. Lewis v. East Texas Finance Co., Tex.Sup., 146 S.W.2d 977, 980; Corpus Juris, Vol. 41, p. 649, § 638, Note; 48 A.L.R. 1156; Tex.Jur. Vol. 29, p. 886, § 74.

■ Appellants next contend that regardless of the fact that the deed of trust and the new note executed in 1925 was for an additional loan, nevertheless, it is superior to the Baldwin deed in that the prior lien was renewed and a large portion of the old indebtedness was brought forward and renewed by the new note. It is not contended that the lien to secure the additional loan would be superior to the Baldwin deed, but that as long as any part of the original indebtedness was due and unpaid it would support a trustee's sale under the new deed of trust. We agree with this last contention. The deed of trust of 1919 was in

existence when Kirk executed the deed to Baldwin. Kirk could not convey a greater title to Baldwin than he himself held. Kirk's title to the land, including the oil and minerals, was burdened with the 1919 deed of trust, and his assignee, Baldwin, acquired from him no greater rights. Baldwin took his lease with at least constructive knowledge of the fact that the original indebtedness and the lien securing the same could and might be renewed by Kirk from time to time. Allison-Richey Gulf Coast Home Co. v. Welder, Tex.Civ.App., 220 S.W. 392; Templeman & Son v. Kempner, Tex.Civ.App., 223 S.W. 293. The fact that an additional loan was made would not have the effect of discharging the Baldwin lease from the superior lien, and so long as the original indebtedness remained past due and unpaid a foreclosure under the deed of trust of 1925 would have the effect of transferring the entire fee-simple interest in the land to the purchaser at such sale, free from the Baldwin deed. Texas Co. v. Tucker, Tex.Civ.App., 129 S.W.2d 762; Richmond v. Nowlin, Tex.Civ.App., 135 S.W.2d 521.

■ We now come to the question of the validity of the sales made under the deed of trust. The first sale, for the past-due installment, was a valid sale. The questions here raised were decided in Hart v. McClusky, Tex.Civ.App., 118 S.W.2d 1077, writ refused by the Supreme Court. This court followed that case in Borah v. Young, 129 S.W.2d 782. The Corpus Christi National Farm Loan Association was the purchaser at the first trustee's sale. It conveyed the property to one Eastland, and he in turn conveyed it to Countiss, thus Countiss became the owner of the land, and it, therefore, is not necessary, so far as this suit is concerned, to determine whether the second trustee's sale was valid.

■ Appellees contend that their royalty interest was not foreclosed by the trustee's sale made under the 1925 deed of trust, because they did not join in the execution of this deed of trust. Appellees took their mineral deed burdened by the deed of trust lien of 1919, and Kirk could renew and extend this lien without the necessity of a joinder of the representatives of the Baldwin estate. Allison-Richey Gulf Coast Home Co. v. Welder, Tex.Civ.App., 220 S.W. 392; Templeman & Son v. Kempner, Tex.Civ.App., 223 S.W. 293; Richmond v. Nowlin, Tex.Civ.App., 135 S.W.2d 521.

■ Appellees could have protected their royalty interest by paying off the indebtedness secured by the 1919 deed of trust prior to either one of the trustee sales. Hampshire v. Greeves, 104 Tex. 620, 143 S.W. 147; Texas Company v. Tucker, supra.

After the trustee's sale of February 5, 1935, appellees were possessed, at most, with a mere equity of redemption, as distinguished from title, legal or equitable, and such equity if any, was barred by the four-year statute of limitation, Art. 5529, Vernon's Ann.Civ.St., and lost to appellees under the doctrine of laches and stale demand. Parks v. Worthington, 39 Tex.Civ. App. 421, 87 S.W. 720; Pierce v. Moreman, 84 Tex. 596, 20 S.W. 821; Groesbeeck v. Crow, 85 Tex. 200, 20 S.W. 49; Jasper State Bank v. Braswell, 130 Tex. 549, 111 S.W.2d 1079, 115 A.L.R. 329; Richmond v. Nowlin, supra; Texas Company v. Tucker, supra.

The judgment is reversed insofar as it awards to Hattie Baldwin, individually and as independent executrix of the will of Jacob C. Baldwin, deceased, F. T. Baldwin, as independent executor of the will of Jacob C. Baldwin, deceased, J. C. Baldwin and R. B. Baldwin the title to and possession of an equal one-sixteenth royalty interest in and to the oil, gas or other minerals in and under, and that may be produced and saved from the 68.16 acres of land involved, but such judgment is affirmed insofar as it awards to Vincent J. Meyer and wife, Margaret V. Meyer, on their cross-action, a one-sixteenth royalty interest in and to the oil, gas and other minerals in and under the 68.16 acres involved, and judgment will be here rendered that appellees herein, other than Vincent J. Meyer and wife, take nothing.

Affirmed in part, and reversed and rendered in part.