**Jon MERCER, Appellant,**

v.

**DAORAN CORPORATION, Appellee.**

No. 01–83–00210–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 15, 1983.

Rehearing Denied Dec. 15, 1983.

Theodore Flick and Alister Mahon, Houston, for appellant.

Kee & Patterson, Leland B. Kee, Joseph Patterson, Angleton, for appellee.

Before EVANS, BULLOCK and LEVY, JJ.

## OPINION

EVANS, Justice.

This partition action involves a determination of the priority of certain liens on real property. The plaintiff, Jon Mercer, who purchased a judgment debtor's undivided one-half interest at an execution sale, appeals from a summary judgment entered in favor of the defendant, Daoran Corporation, the purchaser at a deed of trust foreclosure sale. We affirm the trial court's summary judgment.

The summary judgment record shows that the essential facts are undisputed. In 1974 Pauline Ducroz and her son, Charles L. Ducroz, joint owners of the 15-acre tract in suit, executed a promissory note to the First National Bank of Angleton in the principal amount of $55,000, which was secured by a deed of trust on the 15-acre tract.

In February, 1975, an abstract of judgment was filed, creating a judgment lien in favor of the appellant, Jon Mercer, against the undivided one-half interest owned by Charles L. Ducroz in the 15-acre tract.

In September, 1975 Charles L. Ducroz and Pauline Ducroz executed a new deed of trust to secure payment of their indebtedness to the First National Bank of Angleton. This second deed of trust did not expressly recite that it was made in renewal and extension of the original indebtedness and lien securing same, but it recited the debt was for the same principal amount as the original debt. This deed of trust contained the following provision:

> It is understood and agreed that the proceeds of the aforesaid note to the extent that the same are utilized to take up any outstanding liens and charges against the lands above described, or any portion thereof, have been advanced by Noteholder at Grantors' request and upon Grantors' representation that such amounts are due and are secured by valid liens against the above described land. Noteholder shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens, charges and indebtedness, however remote, regardless of whether said liens, charges or indebtedness are acquired by Noteholder by assignment or are released by the holder thereof upon payment. The security herein and hereby provided shall not affect, nor be affected by, any other or further security taken or to be taken from the same indebtedness, or any part thereof.

In 1976 Pauline Ducroz, who had in the interim acquired her son's one-half interest in the property, executed a third deed of trust in favor of First National Bank of Angleton. This instrument secured payment of a promissory note in the principal amount of $68,192, and expressly recited that the note had been "executed in renewal and extension" of the September, 1975 note in the principal amount of $55,000, plus interest. In 1977 Pauline Ducroz executed a fourth deed of trust securing a promissory note in the principal sum of $72,433 to First National Bank of Angleton, and in 1978 she executed a fifth deed of trust securing payment of a $76,000 note to that bank. Both the fourth and fifth deeds of trust recited that they were made in extension and renewal of the 1975 deed of trust.

On September 4, 1979 an execution sale was held on the February, 1975 judgment lien, and the appellant, Jon Mercer, purchased that interest for $5,500 and obtained a sheriff's deed covering the property which was recorded on September 5, 1979. Meanwhile, Pauline Ducroz had defaulted on the payments required by the 1978 note, and the bank posted the property for foreclosure. A foreclosure sale was held on September 2, 1980, and the First National Bank of Angleton, as the high bidder at $9,581.91, acquired a trustee's deed to the property. That deed was recorded on September 4, 1980. Finally, in 1981, the First National Bank of Angleton conveyed the property to the defendant, Daoran Corporation. Thereafter Jon Mercer, the purchaser under the execution sale, brought this action against Daoran Corporation to establish its claim to an undivided one-half interest in the prop-

erty. As stated above, the trial court granted Daoran's motion for summary judgment and Mercer appeals from that judgment.

Mercer contends that the summary judgment proof does not establish, as a matter of law, that the lien created by the August, 1974 deed of trust was legally extended by the 1975 deed of trust, and he contends that the foreclosure of that lien was barred by the four year statute of limitations. TEX. REV.CIV.STAT.ANN. art. 5520 (Vernon 1958). Mercer argues, therefore, that the Bank's foreclosure in 1980 was based solely on the 1978 lien and that his title, being based upon the 1975 judgment lien, was superior to the title acquired by Daoran at the trustee's sale.

Mercer urges that the language in the 1975 deed of trust was not sufficient to renew and extend the lien created in 1974, because the 1975 deed of trust did not specifically express the grantor's intent to extend the 1974 indebtedness and lien. In support of his position, he cites *McGeorge v. Van Meter*, 163 Tex. 552, 358 S.W.2d 580 (1962).

In *McGeorge*, the original deed of trust was given to secure four promissory notes, including one for $1,450, from Walter Stokes and wife to the Bonner Loan & Investment Company. At a time when all of the notes except the $1,450 note had been paid, Stokes and wife conveyed the property in question to D.W. Griffith, who assumed payment of the $1,450 note, and the Stokes reserved a one-half mineral interest. Griffith later executed a deed of trust in favor of Percy McGeorge to secure a $3,000 promissory note, reciting in the deed of trust that the note was given in renewal and extension of the $1,450 note, and that the holder of the indebtedness secured by the deed of trust was expressly subrogated to any and all liens paid by the proceeds of the mortgage and "to all of the rights, powers and equities of the original owners and holders of said ($1,450) note." Thereafter, Griffith defaulted on the payment of the $3,000 note secured by the second deed of trust, and the property was sold at trustee's sale to Arthur McGeorge for $500. The parties owning the Stokes's reserved mineral interest then brought suit to establish their title to an undivided one-half mineral interest against McGeorge, who claimed the full title under the trustee's sale. Both the trial court and the Court of Civil Appeals held in favor of the owner of the reserved mineral interest. The Court of Civil Appeals decided that the language of the second deed of trust did not disclose an intention that the power of sale contained in the second deed of trust would effectively foreclose the reserved mineral interest.

Disagreeing with that conclusion, the Supreme Court, speaking through Justice Norvell, stated:

> We think that it did. While the second deed of trust does not contain the words "merged" and "incorporated", it did expressly provide that the note secured by the second deed of trust was given in renewal and extension of the Stokes $1450.00 note and that the holder thereof was "subrogated to all the *rights, powers,* and equities of the original owners and holders of said $1450 note." This is the usual and customary language employed in instruments which have for their object the carrying forward of an indebtedness and its securing lien for the purpose of incorporating the same into a new form of security.

*McGeorge v. Van Meter,* 358 S.W.2d 580, 582. (Emphasis in original). The Supreme Court in *McGeorge* explained that its holding in that case should not be construed as meaning that, in every case, a power of sale given in a deed of trust will automatically be extended by the giving of a second deed of trust, even though the time for payment of the underlying debt may be so extended. The Supreme Court explained, by way of example, that in *Winters v. Slover,* 151 Tex. 485, 251 S.W.2d 726 (1952), the second deed of trust did not extend such power because its terms expressed only an intention to extend the time for payment of the notes and the vendor's lien. 358 S.W.2d at 583. Distinguishing the circumstances involved in the *Winters* case, the Supreme Court

decided that in *McGeorge* the original debt and deed of trust lien had been carried forward and incorporated in the new form of security evidenced by the second deed of trust, so that the holder of the new note acquired all of the rights, powers and equities of the owner of the original note that was secured by the first deed of trust.

■ In the case at bar, the second deed of trust does not expressly make reference to the first deed of trust lien, but it does specifically provide that the note which it secures includes all existing indebtedness that is secured by outstanding liens against the land, and that the holder of the note being secured is subrogated to any and all rights, superior titles, liens and equities, owned or claimed by any owner or holder of any outstanding liens, charges and indebtedness. Although this language is stated in more general terms than those used in the *McGeorge* second deed of trust, the terms of the instant provision clearly encompass the first deed of trust lien and provide, in effect, that the noteholder is subrogated to all rights held by the original lienholder. The fact that these provisions are stated in more general terms than in *McGeorge* does not lessen their legal effect.

We conclude, therefore, that the terms of the second deed of trust sufficiently reflect the parties' intent to carry forward the original debt and lien for the purpose of incorporating same into the new form of security. Thus, we hold that the 1974 lien was effectively extended by the successive security documents and that foreclosure of that lien was not barred at the time of the Bank's foreclosure in 1980. *McGeorge, supra. See also, Countiss v. Baldwin,* 151 S.W.2d 235 (Tex.Civ.App.—San Antonio, writ dism'd judgmt cor. 1941).

■ We further hold that the summary judgment proof established, as a matter of law, the parties' intent to renew and extend the original deed of trust lien, even aside from the express provisions in the second deed of trust.

The summary judgment record contains the affidavit of the Chairman of the Board of Allied First National Bank of Angleton, formerly the First National Bank of Angleton, which states that the affiant was president of the bank during the period of events in issue in the suit, and that in such capacity, he personally handled all matters relating to the loans in question. The affiant stated that on September 23, 1975 the entire principal indebtedness in the amount of $55,000 secured by the August, 1974 deed of trust was renewed and extended, and that the original makers executed a $55,000 renewal note, a true and correct copy of which was attached to his affidavit. After tracing the renewal and extension transactions subsequent to that time, the affiant stated that when the Ducroz's debt to the bank became in default, the bank instructed him, as trustee under the various deeds of trust, to proceed with foreclosure, and that on behalf of the bank, he foreclosed the bank's mortgage under the 1978 deed of trust.

Although Mercer filed special exceptions to the note on the basis of the best evidence rule, complaining that the absence of the original note had not been explained, the trial court properly considered the note, accompanied by the affidavit of the owner or holder stating that it was a true and correct copy of the original, as competent summary judgment evidence. *Zarges v. Bevan,* 652 S.W.2d 368, (Tex.1983); *Life Insurance Company of Virginia v. Gar-Dal, Inc.,* 570 S.W.2d 378 (Tex.1978).

■ We further hold that the trial court properly accepted the former bank president's affidavit as competent summary judgment proof that the parties intended that their transactions would renew and extend the 1974 indebtedness and lien.

In *Texas Company v. Tucker,* 129 S.W.2d 762 (Tex.Civ.App.—Fort Worth 1939, writ ref'd.), Tucker sued the Texas Company in trespass to try title, tracing his title through a series of deeds of trust from I.M. Dawson. Each deed of trust secured separate promissory notes for successively larger amounts, and none of the deeds recited that it was given to secure a renewal and extension of a prior debt. The bank hold-

ing the debt eventually called for foreclosure of the deed of trust lien, and Tucker bought the property at the trustee's sale.

Subsequent to the date of execution and recordation of the original deed of trust from Dawson to the bank, Dawson conveyed all his interest in the property to J.M. Morris, who later died intestate and childless. The guardian of his widow's estate eventually leased that interest to the Texas Company, the defendant in the action.

The court in *Tucker,* held that because the first deed of trust from Dawson to the bank was of record at the time Morris bought the property, the record constituted constructive notice to Morris that the bank could agree to extend and renew the debt and lien before it became barred by limitations. Noting that the series of notes were between the same parties and for successively larger amounts, the court held that the testimony of the bank officer, indicating the parties' intent to extend and renew the original debt and lien, was admissible and competent proof to show that the transactions were in renewal and extension of the original debt and lien.

The facts in the case at bar are very similar to those in *Tucker.* In this case there is also a succession of notes and deeds of trust between the same parties, and each renewal was executed prior to being barred by the statute of limitations. Furthermore, all succeeding deeds of trust, except the second, expressly recite that they are given in renewal and extension of the prior indebtedness. In this case we also have the bank officer's affidavit with the attached September, 1975 promissory note which is competent evidence of the parties' intent to renew the August, 1974 lien and indebtedness.

Mercer argues that the holding in *Tucker* is inapplicable here, because *Tucker* was decided upon the law as it existed prior to the amendment of Art. 5522, TEX.REV. CIV.STAT.ANN.

We overrule this contention. At the time of the recordation of the abstract of judgment in 1975, the debt secured by the 1974 deed of trust lien had not become barred by the four year limitation period. TEX.REV.CIV.STAT.ANN. art. 5520 (Vernon 1958). Thus, the owner of the judgment lien and all parties holding thereunder were charged with notice of the recorded deed of trust, giving them constructive knowledge that the debt and the lien securing same might be renewed from time to time. *Countiss v. Baldwin, supra; Texas Company v. Tucker, supra;* and, *McGeorge v. Van Meter, supra.* Contrary to Mercer's contention, the purpose of Article 5522 was

> not to protect the lien holder who acquires a lien with full knowledge of a valid existing prior lien, then in full force from a renewal and extension of such prior lien by the owner of the land, although such renewal and extension may be executed either before or after such prior lien appears to be barred by limitation.

*Hughes v. Hess,* 141 Tex. 511, 172 S.W.2d 301, 304 (1943); quoting from *Novosad v. Svrcek,* 129 Tex. 34, 102 S.W.2d 393, 396 (1937).

Mercer also asserts that Daoran failed to prove by competent summary judgment evidence that the bank gave due notice to Pauline Ducroz of its intent to foreclose. Mercer argues that the statements of the former bank president are not competent proof that such notice was properly given, and that because the bank failed to produce the written notice of foreclosure, there can be no presumption that such notice exists.

The deed of trust in question contains the familiar language that, "recitals in the conveyance to the purchaser or purchasers shall be full and conclusive evidence of the truth of the matters therein stated, and all prerequisites to said sale shall be presumed to have been performed, and such sale and conveyance shall be conclusive against the Grantors, their heirs and assigns."

Mercer did not file any summary judgment evidence rebutting this presumption, and it is therefore presumed that all prerequisites to the sale, including notice of foreclosure, were properly effected and that the sale was validly conducted. *Jacobson v.*

*National Western Life Insurance Company,* 403 S.W.2d 528 (Tex.Civ.App.—Houston 1966, no writ). Furthermore, the trustee's deed recites that public notice was posted and that notice to the debtor was mailed at least twenty-one days before the sale, and this recital also gives rise to a rebuttable presumption that such notice was, in fact, given. *Hart v. Eason,* 159 Tex. 375, 321 S.W.2d 574 (1959); *Terry v. Teachworth,* 431 S.W.2d 918 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd, n.r.e.). It was Mercer's burden to produce evidence raising a genuine issue of fact rebutting the existence of the presumed fact. *First National Bank of Mission v. Thomas,* 402 S.W.2d 890 (Tex.1966). Mercer's special exceptions to Daoran's summary judgment motion, seeking to compel Daoran to produce positive evidence in support of such presumptions, did not shift this burden. Because Mercer failed to offer any affirmative proof rebutting the presumptions of fact arising from the recitals in the deed of trust and the trustee's deed, such facts will be considered established as a matter of law. *Jacobson v. National Western Life Insurance Company, supra.*

The judgment of the trial court is affirmed.

BULLOCK and LEVY, JJ., also sitting.