Mary E. McGEORGE, Appellant,

v.

Ruth VAN METER, et vir, et al., Appellees.

No. 16257.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 10, 1961.

Rehearing Denied Dec. 8, 1961.

Hardwicke, Haddaway & Pope, Claude D. Brown and Arthur Haddaway, Fort Worth, for appellant.

Sewell & Forbis, and James E. Forbis, Decatur, for appellee.

MASSEY, Chief Justice.

Judgment of the trial court was rendered for plaintiffs, Ruth Van Meter, et vir, et al., in a suit for trespass to try title against Mary E. McGeorge. From the judgment the defendant appealed.

Judgment affirmed.

The controversy involves an undivided one-half of the minerals underlying a certain tract of land in Wise County, Texas. For our purposes we may assume that appellant stands vested with the surface of the premises, and with the one-half of the minerals not in controversy. She succeeded to this property by inheritance from her husband, Arthur McGeorge, who had obtained it pursuant to a trustee's sale under a certain deed of trust which will become important in our discussion to follow. This deed of trust will be termed the "second deed of trust".

Appellees' claim to the one-half mineral interest in controversy is derived from the reservation of said interest by Walter and Corrine Stokes in a deed given to G. W. Griffith under date of November 10, 1919. At the time of this deed, Stokes and wife owed the Bonner Loan and Investment Company certain monies, including the amount of $1,450.00, evidenced by a note secured by an original deed of trust. The security included not only the whole of the property granted to Griffith, but also covered the one-half mineral interest reserved by Stokes and wife in their deed to Griffith. By the deed's provisions Griffith assumed the debt of $1,450.00. This was never paid.

On March 1, 1923, Griffith found himself in need of funds. He had debts in addition to that of $1,450.00 As of such time Percy McGeorge had succeeded the Bonner Loan and Investment Company as mortgagee beneficiary under the note and deed of trust. Percy McGeorge was willing to renew and extend the note for $1,450.00, and also willing to lend Griffith additional monies. The total amount of indebtedness was agreed to be and become the sum of $3,000.00. Pursuant to such loan transaction, a new note in the amount of $3,000.00 was made to become due on February 1,

1933, with interest payable annually. The new and "second" deed of trust, dated March 1, 1923, was executed to secure said $3,000.00 indebtedness. The following language was set out in the body of the second deed of trust, viz:

"The holder of the indebtedness secured hereby is expressly subrogated to any and all liens paid with the proceeds of this mortgage.

"The note secured hereby is given in renewal and extension of a note for $1,450.-00 dated October 10, 1916, and due December 1, 1922, executed by Walter Stokes and wife to the Bonner Loan and Investment Company, and secured by a deed of trust, recorded in Book 32, page 133, of the Trust Deed Records of Wise County, Texas, and the holder hereof is subrogated to all the rights, powers, and equities of the original owners and holders of said note."

The obligors on the new note failed to pay the same, whereby, under authority of the second deed of trust a substitute trustee conducted a sale, purporting to sell and grant the whole of the property described (the property description in both the original and the second deed of trust being identical) to Arthur McGeorge. Instrument of deed evidencing the sale was executed January 5, 1937. As heretofore noted, the appellant's claim is under Arthur McGeorge, grantee in said deed.

Appellees had leased the disputed one-half mineral interest for a good many years, under different lease instruments. It was only a few weeks prior to the time suit was filed that they had notice that appellant was claiming the same minerals. As heretofore indicated the appellees' claim is under and by virtue of the reservation of the aforesaid mineral interest in the deed Walter and Corrine Stokes made to G. W. Griffith on November 10, 1919.

The primary question to be resolved is whether the circumstances outlined relative to the loan transaction between Griffith and Percy McGeorge in 1923 amounted to a continuation in force and effect of the mortgage on the mineral interest in controversy in and under the second deed of trust. If the second deed of trust covered such, then appellant owns said interest by reason of its having been foreclosed and sold by the trustee to Arthur McGeorge, and her succession to said purchaser's interest. If said interest was not covered by the second deed of trust, then appellant could not have succeeded to it for it was not sold by the trustee.

We have arrived at the conclusion that the original deed of trust lien was never merged with or incorporated into the second deed of trust. Such having never been done, the foreclosure of the lien under the second deed of trust did not transfer the minerals reserved by Stokes, but left title thereto undisturbed, although the lien thereon of the original deed of trust continued as security for any unsatisfied portion of the debt evidenced by the second note even after the foreclosure was actually accomplished. It could have been later foreclosed. Of course, it could have been foreclosed *instead* of the second deed of trust, for by the second deed the debt of $1,450.00, and note evidencing the same, was renewed and extended so as to make the due dates those prescribed in the second deed. In other words the second deed of trust was adequate and effective in so far as it constituted a renewal and extension agreement. If, however, proceeds were derived from the foreclosure of the second deed of trust sufficient to pay the entire indebtedness (the portion of the old which was renewed and extended as well as the additional amount borrowed and necessitating the execution of the second deed of trust), there would have been no debt supporting any additional foreclosure.

After the foreclosure of the second deed of trust, the original deed of trust would continue to have standing as security for any unsatisfied portion of the debt evidenced thereby (whether or not it be also evidenced by the second deed of trust

instrument) until February 1, 1937, the date such lien would have ceased to have force in view of the provision that the note, given in part in renewal and extension of the antecedent debt balance, should be due on February 1, 1933. Vernon's Ann.Tex.St., Art. 5522, "Lien continued in force".

The language we have quoted from the second deed of trust, which we agree had the effect of renewing and extending the indebtedness evidenced by note in the amount of $1,450.00, was not sufficient to make the lien of the original deed of trust a part of the lien of the second so that the foreclosure under authority of said second deed of trust amounted to a foreclosure of the lien of the original. Undoubtedly, the parties to the second deed of trust had authority and capacity to have done such to the extent of an indebtedness of $1,450.00. But if they so intended they did not so provide by the terms of the second deed of trust. Its language did not make the original deed of trust a part thereof. Neither did its language make the lien for the subsisting indebtedness of $1,450.00 a part of the lien given for a greater amount in the second deed of trust. There was no "merger" or "incorporation" of the two instruments, or material parts thereof, so as to effectively foreclose the two separate liens of each in a single foreclosure proceeding.

We do not mean to say that Percy McGeorge was not entitled to foreclose under either deed of trust. He was entitled to foreclose under either or both. As to the original deed of trust he was entitled to foreclose thereunder because of the renewal and extension agreement effected in the second deed of trust. V.A.T.S. Art. 5522, "Lien continued in force", and its predecessor, Art. 5695, "Contracts of extension, how made and construed". What we do say is that when he elected to foreclose *only* under the second deed of trust McGeorge had not foreclosed upon the mineral interest reserved by Stokes in his deed to Griffith on November 10, 1919. It could only have been by a foreclosure under the original deed of trust, by February 1, 1937, that

Stokes' mineral interest could have been divested. There was no such foreclosure and therefore this mineral interest became vested in Stokes and his successors in title after February 1, 1937, free and clear of the lien under consideration.

■ There is no doubt that the parties to the second deed of trust could have made it a *renewal* of the original, or could have incorporated the original *in and as a part of* the second deed. The same thing could be said as to the *lien* of the original deed of trust, whereby it might have been merged or incorporated. But the parties did not do so. Not having received the benefit of what might have been given him by the second deed of trust, Percy McGeorge was restricted to that actually received. Upon foreclosure of such second deed of trust the purchaser thereat would be bound by the deed's provisions and would take title subject to the reserved mineral interest of Stokes' deed to Griffith in 1919. There having never been a foreclosure of the original deed of trust until the aforesaid mineral interest had become vested in its owner, free of incumbrance, there would be nothing in appellant's chain of title which would give her a valid claim thereto.

In arriving at our conclusions we relied principally upon the cases of Winters v. Slover, 1952, 151 Tex. 485, 251 S.W.2d 726; Fogle v. Coxsey, 1956 (Tex.Civ.App. Eastland), 295 S.W.2d 471, writ ref. n.r.e.; and Platte v. Securities Inv. Co., 1932 (Tex. Com.App.), 55 S.W.2d 551. Appellant relies strongly upon language from the opinion in Countiss v. Baldwin, 1941 (Tex.Civ.App. San Antonio), 151 S.W.2d 235, writ dism., judgment correct. A careful examination of the opinion reveals no language of the second deed of trust. If we are correct in our conclusions upon the controlling effect to be given the language of the second deed of trust, consideration given to the points raised for determination, we find nothing contradictory thereof in the Countiss v. Baldwin opinion. Other cases cited by appellant either support our conclusions

or bear upon legal principles which have no control over the disposition.

█ Concerning the admission into evidence of a deed in her own chain of title to the surface of the property and the one-half of the minerals as to which there is no controversy, we must agree with appellant that the trial court erred in admitting the same. See Woldert v. Skelly Oil Co., 1947 (Tex.Civ.App. Texarkana), 202 S.W.2d 706, writ ref. n. r. e. However, the decision in the case being resolved by the law rather than by a determination upon facts, the error has no effect upon the disposition of the case and therefore would be harmless error.

Judgment is affirmed.