FIDELITY LUMBER CO. v. BENDY et al.*
(No. 785.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 14, 1922. Rehearing Denied Nov. 29, 1922.)

1. Trusts ⊜135—Grantee in trust to convey to third person takes title for such purpose as completely as if holding in own right.

Where a deed was made in trust to convey to a third person, the grantee took title as fully and completely for such purpose as though holding in his own right, and not as trustee.

2. Trusts ⊜203—Grantee in deed by trustee held to have acquired record title free from trust limitations.

Where timber lands were conveyed in trust to convey the timber and the land, and the grantee, in executing the trust, conveyed the legal and equitable title to the timber, subject to the conditions of the deed, the purchaser therein received all of the grantor's record title, free from all trust limitations.

3. Trusts ⊜43(3)—Parol evidence of trust limitations in deed inadmissible.

Where a deed was made in execution of a trust to convey both the timber and the lands, parol evidence of trust in the grantee was inadmissible.

4. Deeds ⊜121—Quitclaim deed conveys title as effectually as full warranty deed.

A quitclaim deed is as potent to convey the title of grantor as a general warranty deed.

5. Estoppel ⊜74(2)—Grantors in deed in trust to convey estopped from questioning validity of trustee's deed.

Where a deed was made in trust to convey the lands and the timber thereon, and the true title was vested in the trustee for the purpose of conveying it, the grantors in the trust deed were estopped to question the legal effect of the trustee's deed.

Appeal from District Court, Tyler County; D. F. Singleton, Judge.

Suit by Mrs. M. C. Bendy and others against the Fidelity Lumber Company. From judgment for plaintiffs, defendant appeals. Reversed, and judgment rendered for defendant.

Baker, Botts, Parker & Garwood, of Houston, O. S. Parker, of Beaumont, and J. E. Wheat, of Woodville, for appellant.

E. R. Campbell, of Houston, and J. A. Mooney and Coleman & Lowe, all of Woodville, for appellees.

WALKER, J. This suit involved title to the timber on the 440-acre Prescott survey in Tyler county, and was instituted by J. A. Mooney and Mrs. M. C. Bendy, joined by her husband, H. W. Bendy, as plaintiffs, against the Fidelity Lumber Company, as defendant.

They also prayed for damages to the timber occasioned by turpentine operations. J. 'C. Haralson was the common source of title, and the proof showed that title was vested in him under an agreement with Mooney, plaintiff H. W. Bendy, and David Russell, whereby he was to hold the land in trust for them for the purpose of selling the timber to S. F. Carter. The beneficiaries under the trust were to divide the profits from the timber sale equally among themselves, and then the trustee was to reconvey the land as they directed. In execution of this trust, Haralson conveyed the timber to S. F. Carter, by the following deed and for the consideration expressed therein:

"Timber Deed.

"The State of Texas, County of Tyler.

"Know all men by these presents that I, James C. Haralson of the county of Tyler, and state of Texas for and in consideration of the sum of one thousand ($1,000.00) dollars to me in hand paid by S. F. Carter of Harris county, state of Texas, the receipt of which is hereby acknowledged, have granted, sold and conveyed and by these presents grant, sell and convey unto the said S. F. Carter all of the pine timber now standing and growing upon 440 acres of land situated in the county of Tyler, state of Texas, the same being all of the N. Prescott survey of land. The said 440 acres of land upon which said timber is now standing and growing is more particularly described as follows: [Here follows description of property by metes and bounds.]

"It is further understood and agreed that the said S. F. Carter or his assigns shall have from this date fifteen years in which to cut, fell and remove said timber from said land as above described. And if at the expiration of said fifteen years the said S. F. Carter or his assigns have not cut and removed said timber, an additional term of ten years, or so much thereof as may be required is to be granted on payment of 10 cents per acre per annum for each additional year that may be taken to remove said timber beyond the time originally granted in this contract.

"And it is further agreed that the said S. F. Carter or his assigns shall have the only and exclusive right to build upon said land a tramroad, wagon road and railroad. A right of way 100 feet wide is hereby granted for said railroad to remove said timber and timber on tracts adjacent and beyond, provided that said wagon, tram or railroad shall not enter upon and run through any of the cultivated land upon said tract of land without special agreement, the right of way to remain in force and effect as long as may be required by the grantee or his assigns.

"And it is further agreed and understood that the said S. F. Carter or his assigns or their employés shall have the right to ingress and egress upon said land at all times for the purpose of cutting, felling and removing said timber.

"To have and to hold all and singular the above-described timber with all the rights thereto unto the said S. F. Carter and his heirs and assigns. And I do hereby bind myself my heirs executors and administrators to warrant and forever defend the title to said timber against the claim of each and every person whomsoever lawfully claiming or to claim the same or any part thereof, by through or under me.

"Witness my hand on this the 14th day of Feb. A. D. 1902.        J. C. Haralson."

Afterwards, on the 24th day of February, 1902, at request of the beneficiaries, Haralson executed the following deed to David Russell:

"The State of Texas, County of Tyler.

"Know all men by these presents, that I, J. C. Haralson of the county of Tyler, state of Texas, for and in consideration of the sum of four hundred and forty dollars to me paid by David Russell, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said David Russell of the county of Tyler all that certain tract or parcel of land lying and being in Tyler county, Texas, said to contain four hundred and forty acres of the headright survey in the name of Nathaniel Prescott, bounded as follows: [Here follows description of property.]

"The timber on said above land has been by me heretofore conveyed to S. F. Carter by deed.

"To have and to hold the above-described premises, together with all and singular the rights and appurtenances thereto in any wise belonging unto the said David Russell, his heirs and assigns forever. And I do hereby bind myself, my heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said David Russell, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, by, through and under me.

"Witness my hand at ———, this 24th day of Feb., A. D. 1902.        J. C. Haralson."

As summarized by the statement of facts, Carter's title to the timber passed to appellant, defendant below, under the following chain of title:

"Deed from S. F. Carter to the Emporia Lumber Company, dated June 16, 1903, filed for record June 17, 1903, recorded in volume 10, page 277, Tyler County Deed Records, conveying, among other tracts of land and timber, the following:

"All pine timber on 440 acres in Prescott headright and conveyed to me by James C. Haralson, February 14, 1902, by deed recorded in volume 5, page 479, Deed Records of Tyler County, Tex.

"A general warranty deed from the Emporia Lumber Company to J. L. Thompson, Alexander Thompson, and Hoxie H. Thompson, reciting a consideration of $500,000, dated July 2, 1906, conveying, among other land and timber, the following:

"440 acres, being the N. Prescott survey, conveyed to S. F. Carter by J. C. Haralson, November 14, 1902, by deed recorded in volume 5, page 499, Deed Records of Tyler County, Tex., filed for record July 11, 1906, recorded in volume 17, pages 467, to 478, inclusive, of Tyler County Deed Records.

"A general warranty deed from J. L. Thompson, Alexander Thompson, and Hoxie Thomp-

son to Thompson Bros. Lumber Company, a corporation, dated November 12, 1906, filed for record November 24, 1906, and recorded in Book 18, p. 284, Tyler County Deed Records, reciting a consideration of a million dollars, paid and to be paid, conveying, among other tracts of land and timber, the tract of land described in the preceding deed.

"A general warranty deed from Thompson Bros. Lumber Company, a corporation, to R. A. Long, dated January 1, 1912, recorded in volume 32, p. 364, Deed Records of Tyler county, conveying, among other property, the same property conveyed in the deed from the Emporia Lumber Company to J. L. Thompson, Alexander Thompson, and Hoxie H. Thompson.

"A deed from R. A. Long to the Fidelity Lumber Company, a corporation, dated August 27, 1912. Filed for record August 20, 1912, recorded in volume 33, page 1, Tyler County Deed Records, conveying with other property, the same property described in the deed from the Emporia Lumber Company to J. L. Thompson, Alexander Thompson, and Hoxie H. Thompson, hereinabove set out."

Appellant acquired this title for a valuable consideration and without knowledge of the claim now asserted by plaintiffs, and on the advice of able lawyers, who, on examination of the abstract, gave the opinion that it was acquiring a fee-simple title.

On the 3d day of September, 1909, at request of Mooney, Russell executed and delivered the following deed to Thompson Bros. Lumber Company, who at that time owned the Carter title:

"The State of Oklahoma, County of ———.

"Know all men by these presents: I, David Russell, of the county of ——— and state of Oklahoma, for and in consideration of the sum of one ($1.00) dollars to ——— in hand paid by Thompson Brothers Lumber Co. of the county of Harris and state of Texas, the receipt of which is hereby acknowledged, do, by these presents, bargain, sell, release and forever quitclaim unto the said Thompson Brothers Lumber Company, its assigns, all my right, title and interest in and to that certain pine timber upon that tract or parcel of land lying in the county of Tyler and state of Texas, described as follows, to wit: 440 acres Pat. to Nathaniel Prescott, Abstract No. 523, Pat. No. 13, vol. 46.

"To have and to hold the said premises, together with all and singular the rights, privileges and appurtenances thereto in any manner belonging unto the said Thompson Brothers Lumber Company, its assigns, forever so that neither the said Thompson Brothers Lumber Company nor any person or persons claiming under it shall at any time hereafter have, claim or demand any right or title to the aforesaid premises or appurtenances, or any part thereof.

"Witness my hand at Madill this 3d day of Sept., A. D. 1909.                David Russell.

"Witnesses at request of grantor."

This deed was duly filed for record on the 3d day of September, 1909. On the same day, at the request of Mooney, Russell executed and delivered to him the following deed, which was filed for record on the 18th of September, 1909:

"The State of Oklahoma, County of ———.

"Know all men by these presents: That I, David Russell of the county of ———, state of ———, for and in consideration of the sum of one ($1.00) dollars, to ——— paid, and secured to be paid by J. A. Mooney and other good and valuable consideration paid as follows: ———, have granted, sold and conveyed, and by these presents do grant, sell and convey, unto the said J. A. Mooney, of the county of Tyler, state of Texas, all that certain ⅓ interest in and to the 440-acre survey patented to Nathaniel Prescott, same being abstract No. 523, Pat. No. 13, vol. 46, all merchantable pine timber having been heretofore sold the same is expressly excepted from the deed save and except such as shall remain after it is cut over one time.

"To have and to hold the above-described premises, together with all and singular the rights and appurtenances thereto in any wise belonging, unto the said J. A. Mooney, heirs and assigns forever; and ——— do hereby bind myself, heirs, executors, and administrators, to warrant and forever defend, all and singular the said premises unto the said J. A. Mooney, heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, by through or under me.

"Witness my hand at ——— this 3d day of Sept., A. D. 1909.                David Russell."

On the 6th day of April, 1910, Russell executed to Mrs. Hallie B. Fain, the daughter of H. W. Bendy, at his request, the following deed, which was filed for record on the 6th day of April, 1910:

"The State of Oklahoma, County of Marshall.

"Know all men by these presents: That I, Dave Russell of the county of Marshall, state of Oklahoma, for and in consideration of the sum of one dollar and other good and valuable considerations Dollars paid by Mrs. Hallie B. Fain in cash the receipt whereof is hereby acknowledged have granted, sold and conveyed and by these presents do grant, sell and convey unto the said Mrs. Hallie B. Fain, of the county of Wharton, state of Texas, all that certain tract or parcel of land lying and being in Tyler county, Texas, and said to contain four hundred and forty acres of the headright survey of Nathaniel Prescott, bounded as follows, on the north by sections four and five G. & B. Nav. Co. land on the east by sect. 9, G. & B. Nav. Co. land on the south by the Ira Parker league survey, on the west by the William Campbell league all merchantable pine timber standing on the above-described survey, having been conveyed to S. F. Carter by deed and also one hundred acres of land out of the southeast corner of the above survey having been previously convey by deed to W. R. Haralson of Tyler county, Texas, so this only conveys title to three hundred and forth acres of the said Nathaniel Prescott 440-acre survey.

"To have and to hold the above-described premises, together with all and singular the rights and appurtenances thereto in any wise

belonging unto the said Mrs. Hallie B. Fain, her heirs and assigns forever, and I do hereby bind myself, my heirs, executors. and administrators, to warrant and forever defend all and singular the said premises unto the said Mrs. Hallie B. Fain, her heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"Witness my hand at Madill, Oklahoma, this 6th day of Apl. A. D. 1910.

"David Russell."

About the 16th day of April, 1913, Mooney and Mrs. Fain by deeds partitioned this land between themselves; Mooney taking 143 acres, which deeds were duly recorded. In 1902, at request of H. W. Bendy, Russell deeded to W. T. Haralson 100 acres of the land. At the expiration of the 15-year period given to the Haralson-Carter deed, this defendant, who then owned the Carter title, believing that it owned the full fee-simple title to the timber, did not offer to pay the 10 cents per acre stipulated in that deed, as the price of a further extension. On this issue the statement of facts reflects the following agreement:

"Relying upon the deed from David Russell to Thompson Bros. Lumber Company, conveying this timber upon this 440 acres of land, in the deed from Russell to Mr. Mooney, in which the timber was expressly excepted and other deeds of record showing that the timber rights were recognized in our client, recognized as being in Russell at the time he conveyed to Thompson Bros. Lumber Company, and acting upon the opinion of counsel, of its attorneys, the Fidelity Lumber Company has not paid or tendered the amount called for in the deed from Haralson to S. F. Carter, of 10 cents per acre per annum, for the right of extension of time at the expiration of the 15 years in which to remove the timber."

On the 8th day of January, 1920, plaintiffs instituted this suit. On a trial to the court without a jury, judgment was entered for plaintiffs for the interest in the timber claimed by them and for damages. The defendant has brought the case before us on assignments and propositions, urging that judgment should have been entered in its favor on the undisputed evidence, and, if in error in this contention, that the cause should be remanded for a new trial on errors committed by the trial court in the admission and construction of the evidence.

As we believe judgment should have been entered in favor of defendant, we do not discuss the propositions urging a reversal and remanding of the cause, though we believe some of them show error. We give the following reasons for our conclusions:

### Opinion.

[1-3] Under the conveyance to Haralson, which vested in him the real and apparent title to the Prescott survey, he held both the legal and equitable title, but only for the purpose of executing the trust, which was to convey the timber to S. F. Carter. For that purpose, he had title as fully and completely as if holding in his own right, and not as trustee. Montgomery v. Trueheart (Tex. Civ. App.) 146 S. W. 284. In executing this trust, he conveyed to Carter the legal and equitable title to the timber, subject to the conditions of the deed, which title passed to appellant under a regular chain of title, who thereby acquired all the title which the record discloses Haralson held; that is, the legal and equitable title to the timber. Appellant acquired that title free of all trust limitations, and as to it parol proof of trust was not admissible. By this proposition we mean to say that appellant, a remote vendee for value and in good faith, had the right to deal with this timber on the assumption that Haralson was the owner thereof; otherwise the rule announced in Montgomery v. Trueheart would be meaningless.

[4] Clearly Haralson's deed to Russell purported to convey the land and residuary interest in the timber. Having once dealt with this timber as the property of Haralson, in whom the law vested the title, the vendees of Carter, holding under general warranty deeds, could, in all subsequent dealings, assume that he was the true owner and that his special warranty deed to Russell conveyed the true title. Then as between Russell and the vendees of Carter, the true title was in Russell, and his quitclaim deed to a purchaser for value and without notice of the claim asserted by appellees was as potent to convey the title as would have been a general warranty deed. We are not unmindful of the general rule that a holder under a quitclaim deed cannot be an innocent purchaser, and will not be protected against the equities of third parties. But this is because his vendors did not own the true title. If they owned the beneficial interest, there would be nothing outstanding against the quitclaim, and hence that deed would convey the true title, and no issue could arise against it. In our judgment, that is the effect of the deed to Haralson, and his deed to Russell. Of course, we limit this construction to the dealings between Haralson and Russell on the one part, and Carter and his vendees on the other, but as they are the only ones interested, our conclusion vests the true title to this timber in appellant.

[5] The same result must follow, even on proof of the trust agreement. Having vested the true title in Haralson for the purpose of conveying it to Carter, appellees are estopped to question the legal effect of his deed. Having vested Haralson with the legal and equitable title, and having permitted Carter to acquire this title, and to deal with him as the owner in fact, they are now estopped to deny

his title, and the apparent force of his deed to Russell—as between Russell and those who had acquired an interest in the title under Haralson for valuable consideration and without notice. A 'condition once shown to exist is presumed to continue until the contrary is shown. We find no suggestion in this record that Carter and his vendees had any notice whatever of appellee's equity.

Then again, the title was conveyed to Haralson for the purpose of transferring it to Carter. As we have said, this gave him the true legal and equitable title for this purpose. He did not fully discharge the trust; that is he did not convey all the title to Carter, but conveyed him only a limited estate, and the residuary interest he conveyed to Russell. The timber title was all along burdened with the original trust; that is to say, it was to be conveyed to Carter. Russell only discharged this obligation in full, and a holder under Carter, without notice and for value, acquired this title. We believe Russell's interest in the timber was the same as Haralson's, as between him and Carter's vendees, and that his quitclaim deed was as potent to convey the true title to appellant as would have been Haralson's to Carter. We reach this conclusion on the admission of appellees that the original purpose of the trust was never modified nor the character of the title changed until after the execution by Russell of the quitclaim deed to Thompson Bros. Lumber Company.

Under the rule of common source, appellant should recover. This proof was offered by appellees. As we have seen, the common source held the beneficial, as well as the legal, title for the purpose of conveying it to Carter. In order to destroy appellant's title, appellees seek to go behind Haralson's legal and equitable title, and show that it was, in fact, only a trust title. As we understand the law on this proposition, that cannot be done. Appellees could offer no proof that would impeach a title which they themselves had originated, and which has been transferred to innocent holders for value, and on the status of such holding had acquired the residuary interest. Rice v. Railway Co., 87 Tex. 90, 26 S. W. 1047, 47 Am. St. Rep. 72.

We believe appellees are barred from recovery on the following propositions of pure estoppel, in addition to what we have already said:

(a) They said in effect to Carter that Haralson owned this timber. Relying on that representation, he bought, and his title passed to appellant. As Carter and his vendees were never advised that the title was not as originally represented, it seems to us that the conclusion should follow that they had the right to deal with Haralson and his vendee on the assumption that the title was where appellees had represented it to be.

(b) Again, as Mooney requested the execution and delivery of the quitclaim deed to Thompson Bros. Lumber Company, he made himself a party thereto, and is now estopped to question the title of one holding under it for value and without notice of his secret interest. Dooley v. Montgomery, 72 Tex. 432, 10 S. W. 451, 2 L. R. A. 715.

(c) The record does not show that plaintiff H. W. Bendy knew, in fact, of the execution of the quitclaim deed to Thompson Bros. Lumber Company until after defendant acquired its title, but the deed was duly placed of record in 1909. At his request, Russell had conveyed 100 acres of this land to W. R. Haralson in 1902. In 1909 Russell conveyed Mooney his one-third interest, at the same time executing the quitclaim deed to Thompson Bros. Lumber Company. In 1910, he conveyed all the land except the 100 acres, at Bendy's request to his daughter. In 1913, his daughter and Mooney executed partition deeds among themselves. All these deeds were duly placed of record prior to the time defendant acquired its title. The deeds from Russell to Mrs. Fain and Mooney, of which Bendy had actual notice, expressly referred to the fact that the timber had been sold. We believe these facts are sufficient, as a matter of law, to give Bendy notice that Russell had conveyed the timber to Thompson Bros. Lumber Company, and when, by delaying, he permitted defendant to acquire title to the timber, in ignorance of his claim, he must now be held estopped.

For the reasons given, the judgment of the trial court in favor of appellees is reversed, and judgment here rendered in favor of appellant, vesting in it the fee-simple title to the timber in controversy.

Reversed and rendered.