MARY E. McGEORGE, Petitioner

v.

RUTH VAN METER ET AL, Respondents

No. A-8797.   Decided June 20, 1962
358 S.W. 2d 580

Hardwicke, Haddaway & Pope, Fort Worth (Claude D. Brown with above firm) for petitioner.

Sewell & Forbis, Decatur, for respondent.

ASSOCIATE JUSTICE JAMES R. NORVELL delivered the opinion of the Court.

This is an action in trespass to try title brought by Ruth Van Meter and others against Mary E. McGeorge for the recovery of title and possession of an undivided one-half of all the oil, gas and other minerals in, on and under a 95.34 acre tract of land situated in Wise County, Texas. Judgment for the plaintiffs was rendered by the District Court and affirmed by the Court of Civil Appeals.

The case turns upon the question of whether or not a deed of trust foreclosure sale held on January 5, 1937 effectively passed the Stokes (Van Meter et al) interest to Arthur McGeorge, the purchaser at said sale. The petitioner, Mary E. McGeorge, claims under Arthur McGeorge.

It was agreed that the common source of title was M. A. Small and wife, Laura C. Small.

On June 3, 1916, M. A. Small and Laura A. Small conveyed the 95.34 acre tract to Walter Stokes for a cash consideration.

On June 10, 1916, Walter Stokes and wife, Corine Stokes, executed a deed of trust to W. A. Bonner, Trustee, conveying among other lands, the 95.34 acre tract here involved. This deed of trust was given to secure four promissory notes including one for $1450.00 due December 1, 1922 and payable to The Bonner Loan & Investment Company. In the briefs this instrument is generally referred to as the first deed of trust.

On November 10, 1919 at a time when all of the notes above mentioned, except the $1450.00 note, had been paid, Walter Stokes and wife conveyed the 95.34 acre tract to G. W. Griffith for a cash consideration of $6500.00 and the assumption of the $1450.00 note above mentioned. In this deed the grantor reserved the mineral interest which is the subject matter of this action. The wording of the reservation was that, "Grantor reserves one-half of the royalty and one-half of the mineral lease rights on the hereinafter described tract."

On March 1, 1923 G. W. Griffith and the heirs of his deceased wife executed a deed of trust to secure a promissory note for $3,000.00 due February 1, 1933 and payable to Percy McGeorge. This deed of trust contained the following provision:

"The holder of the indebtedness secured hereby is expressly subrogated to any and all liens paid by the proceeds of this mortgage.

"The note secured hereby is given in renewal and in extension of a note for $1,450.00 dated October 10, 1916, and due December 1, 1922, executed by Walter Stokes and wife to the Bonner Loan and Investment Company, and secured by a deed of trust recorded in Book 32, Page 133, of the trust deed records of Wise County, Texas and the holder hereof is subrogated to all the *rights, powers,* and equities of the original owners and holders of said note.

"The money loaned by the said third party is borrowed for the purpose of providing funds necessary for the payment of debts owing by the estate of Addie E. Griffith, deceased, and constituting valid claims against said estate." (Italics supplied.)

In the briefs this 1923 deed of trust is generally referred to as the second deed of trust.

On March 14, 1923, Percy McGeorge received a written assignment of the Stokes $1450.00 note from J. A. Simmons who held the same under mesne assignments from Bonner Loan & Investment Company.

Griffith defaulted in the payment of the $3,000.00 note secured by the second deed of trust and on January 5, 1937 the 95.34 acre tract was sold at trustee's sale to Arthur McGeorge for $500.00.

■ Deed of trust sales are largely controlled by statute in this state, Article 3810, Vernon's Ann. Texas Stats., and the provisions of the deed of trust given by Stokes to W. A. Bonner, trustee, on June 10, 1916, were substantially the same as those contained in the later deed of trust of March 1, 1923, insofar as the procedures relating to an extra-judicial foreclosure in case of default in the payment of indebtedness were concerned. The Court of Civil Appeals held in effect that Griffith *could* have agreed with McGeorge that the power of sale contained in the second deed of trust would be effective to foreclose the Stokes reserved mineral interest insofar as the indebtedness originally represented by the $1450.00 note was concerned, but that the

language selected by them in their wording of the second deed of trust did not disclose such intention.[1]

We are unable to agree with this latter conclusion.

■ The Stokes $1450.00 indebtedness was originally secured by a deed of trust lien covering the entire 95.34 tract. Griffith had assumed payment of this indebtedness and was authorized to extend the payment thereof without the joinder of Stokes. He could not however subject the Stokes retained mineral interest to any additional indebtedness. The second deed of trust was, however, effective to extend the $1450.00 note and preserve the lien securing the payment thereof. Article 5522, Vernon's Ann. Texas Stats. As pointed out by the Court of Civil Appeals, the controlling question presented is whether the exercise of the power of sale under the second deed of trust effectively foreclosed the Stokes mineral interest.

We think that it did. While the second deed of trust does not contain the words "merge" and "incorporated", it did expressly provide that the note secured by the second deed of trust was given in renewal and extension of the Stokes $1450.00 note and that the holder thereof was "subrogated to all the *rights, powers,* and equities of the original owners and holders of said $1450.00 note". This is the usual and customary language employed in instruments which have for their object the carrying forward of an indebtedness and its securing lien for the purpose of incorporating the same into a new form of security.

The facts disclosed by the opinion in Countiss v. Baldwin, Texas Civ. App., 151 S.W. 2d 235, dism., judg. cor., are similar to those shown by the record before us. In *Countiss,* it appears that in 1919 one Kirk executed a deed of trust to secure an indebtedness due the Federal Land Bank. In 1920 he conveyed a mineral interest to Baldwin. In 1925 the Federal Land Bank advanced further monies to Kirk, extended the time of payment of the 1919 loan, and took a new deed of trust from Kirk. In commenting upon the effect that a foreclosure under this deed of trust had on the Baldwin interest, the Court of Civil Appeals said:

"Appellees (the holders of the Baldwin mineral interest) contend that their royalty interest was not foreclosed by the trustee's sale made under the 1925 deed of trust, because they did not join in the execution of this deed of trust. Appellees

---

1. 351 S.W. 623, l.c. 626.

took their mineral deed burdened by the deed of trust lien of 1919, and Kirk could renew and extend this lien without the necessity of a joinder of the representatives of the Baldwin estate. Allison-Richey Gulf Coast Home Co. v. Welder, Texas Civ. App., 220 S.W. 392; Templeman & Son v. Kempner, Texas Civ. App., 223 S.W. 293; Richmond v. Nowlin, Texas Civ. App., 135 S.W. 2d 521.

"Appellees could have protected their royalty interest by paying off the indebtedness secured by the 1919 deed of trust prior to either one of the trustee sales. Hampshire v. Greeves, 104 Texas 520, 143 S.W. 147; Texas Company v. Tucker, supra.

"After the trustee's sale of February 5, 1935, appellees were possessed, at most, with a mere equity of redemption, as distinguished from title, legal or equitable, and such equity if any, was barred by the four-year statute of limitation, Art. 5529, Vernon's Civ. St., and lost to appellees under the doctrine of laches and stale demand. Parks v. Worthington, 39 Texas Civ. App., 421, 87 S.W. 720; Pierce v. Moreman, 84 Texas 596, 20 S.W. 821; Groesbeck v. Crow, 85 Texas 200, 20 S.W. 49; Jasper State Bank v. Braswell, 130 Texas 549, 111 S.W. 2d 1079, 115 A.L.R. 329; Richmond v. Nowlin, supra; Texas Company v. Tucker, supra.

The Court of Civil Appeals in this case points out that the opinion in Countiss v. Baldwin does not set out the language contained in the 1925 deed of trust relating to the prior deed of trust executed by Kirk in 1919. It is inferred that the language of the second deed of trust may have been entirely sufficient to have vested the trustee in the second deed of trust with full power to sell the property covered by the 1919 deed of trust in order to discharge the indebtedness secured by said mortgage which had been extended by the execution of the second deed of trust. This seems to be the only possible legal distinction between *Countiss* and this case. We believe the propositions of law discussed in the excerpt from the Countiss opinion above set out were correctly decided, and consequently we are again met by the recurring question: Was the subrogation language contained in the Griffith-McGeorge deed of trust of 1923 sufficient in law to vest in the trustee in said deed of trust the power to sell the property and thus foreclose the lien as it existed in 1916 at the time the Stokes-Bonner deed of trust was executed. We hold the language used in the 1923 deed of trust was sufficient and this holding settles the case as it appears that the indebtedness evi-

denced by the original note for $1450.00 had not been discharged at the time of the 1937 deed of trust foreclosure sale.

This does not mean that any second deed of trust given upon property automatically carries forward the power to sell such property under the second deed of trust in order to pay an indebtedness secured by a first deed of trust even though the time for the payment of such indebtedness be extended by a valid agreement. One of the cases cited by the Court of Civil Appeals is illustrative of this situation. In Winters v. Slover, 151 Texas 485, 251 S.W. 2d 726, this Court considered an unusual deed of trust provision reading as follows:

"It is especially understood and agreed by all parties hereto that this (second) Deed of Trust may be declared void * * * in case the interest which matures on the 1st of November, 1925, secured by a (prior) deed of trust, * * * and in case the interest which matures on the first of October, 1925, secured by (another prior) deed of trust * * * shall not have been paid at maturity and any action taken by the beneficiary under said former deeds of trust and extension agreement shall be evidence of the fact that such payment and interest has not been made."

In view of this provision a subsequent clause relating to an extension of time for the payment of notes and the liens securing the same could not operate to vest a power of sale in the trustee under the subsequent deed of trust which would foreclose all the liens mentioned in the prior deeds of trust. Obviously, if a failure to pay interest under the prior deeds of trust could result in a valid sale under the prior deeds of trust and could render the subsequent deed of trust void, it could not be said that the parties intended an "incorporation" or a "merger" of deed of trust liens.

It was also pointed out in *Winters* that the portion of the second deed of trust relating to an extension of notes and liens referred only to vendor's liens. This Court held that such provision showed "no intention to incorporate the prior deeds of trust, but shows only an intention to extend the express vendor's liens, and perpetuate the superior legal title in the mortgagee to all surface and all mineral rights. This Chilton had a right to do, both under an authorization by statute, Article 5520, 5522 and their predecessors, Texas Civ. Stats., 1925, Vernon's Ann. Civ. St. Arts. 5520, 5522; Texas Land & Mortgage Co., Ltd. v. Cohen, Texas Com. App., 138 Texas 464, 159 S.W. 2d 859. Under the authority of that case, Chilton and Hancock Mutual also would

have had the right to renew and extend the former deed of trust covering the entire surface and minerals without T. J. Slover's consent. *The absence of a provision to such effect shows that this was not done.* The renewal of the express vendor's liens was merely to negative any intention on the part of the mortgagee to waive his rights to judicial foreclosure or trespass to try title under the same." (Italics added.)

In the second deed of trust involved in this case, the first deed of trust lien is mentioned specifically, the indebtedness secured thereby is carried forward and incorporated in the note secured by the second deed of trust and the holder of such note acquired all the rights, powers and equities of the original owner of the note secured by the first deed of trust. The point of difference between the Court of Civil Appeals and this Court is comparatively narrow and turns upon the wording of the second deed of trust. The language of this instrument, in our opinion, places the case within the rule of Countiss v. Baldwin as above stated.

The judgments of the lower courts are reversed and judgment here rendered that petitioner do have and recover of and from the respondents the title and possession of the real property which is the subject matter of this action, namely, an undivided one-half of all the oil, gas and other minerals in, on and under the 95.34 acre tract here involved.

Opinion delivered June 20, 1962.