THE CADLE COMPANY, Appellant,

v.

Frank X. CAAMANO and Rose
Mary Caamano, Appellees.

No. 14–95–00145–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 19, 1996.

Robert Rice, Angleton, Manfred Stern-
berg, Jr., Richard L. Morrison, Houston, for
appellant.

Mark S. Pfeiffer, Dallas, for appellees.

Before MURPHY, C.J., and AMIDEI and ANDERSON, JJ.

## CORRECTED OPINION

AMIDEI, Justice.

This is an appeal from a judgment granted to appellees, Frank X. Caamano and Rose Mary Caamano, clearing title to their property. Appellant, The Cadle Company, is the successor in interest to the First City Bank of Northline. All the interests of First City Bank of Northline ("Bank") were assigned to appellant. Appellant claims in two points of error that the trial court erred because appellant's security interest in appellees' property was never released. As modified, the judgment of the trial court is affirmed.

The issues in this case are: (1) the validity of the Coleman 1987 deed of trust and (2) the release of the same Coleman 1987 deed of trust by the Bank. The transactions in appellees' chain of title necessary to the resolution of the issues on this appeal are:

1. In 1984, Coleman conveyed title to the property by warranty deed with vendor's lien to Kjorvestad.

2. In February, 1985, Kjorvestad re-conveyed the same property to Coleman by an instrument entitled "Quit Claim Deed" and subsequently executed, delivered and filed an instrument entitled "Correction Warranty Deed" in January, 1987, to Coleman. The correction deed ratified the quit claim deed in all respects and added a covenant of general warranty. The correction deed was effective as of the date of the quit claim deed.

3. In June, 1985, Coleman conveyed the property to Murray by general warranty deed with vendor's lien. The note to Coleman in part payment of the purchase price was secured by a deed of trust lien and a vendor's lien.

4. In December, 1986, Coleman transferred and assigned the note from Murray as part of a collateral assignment to the Bank to partially secure Coleman's $200,000.00 note to the Bank dated November 8, 1985. This note was renewed and extended on November 8, 1986, as stated in the collateral assignment.

5. On October 16, 1987, Coleman executed the questioned 1987 deed of trust and security agreement to the Bank as security for Coleman's $200,000.00 renewal note dated November 8, 1986 as again renewed and extended on May 8, 1987. The validity of this 1987 deed of trust is the subject of this suit; it was filed November 9, 1987, at Clerk's File No. L417714 of the Real Property Records of Harris County.

6. In March, 1988, Coleman executed the 1988 deed of trust, assignment of rents, and security agreement, which recited that the instrument was to secure a renewal and extension of Coleman's 1987 renewal note secured by the questioned 1987 deed of trust. The 1988 deed of trust was filed April 25, 1988, at Clerk's File No. L632725 of the Real Property Records of Harris County.

7. On September 28, 1988, the Bank executed an instrument entitled "Full Release of Lien" which, by its terms, released the liens secured by Coleman's 1986 collateral assignment and Coleman's 1988 deed of trust, assignment of rents, and security agreement (the 1988 deed of trust, assignment of rents, and security agreement purports to be in renewal and extension of the note secured by the questioned 1987 deed of trust). This release was filed for record October 18, 1988, at Clerk's File No. L894825 of the Real Property Records of Harris County.

8. On January 20, 1989, Murray conveyed the property to Triple B Enterprises by general warranty deed dated January 20, 1989 and recorded January 24, 1989.

9. On January 20, 1989, Triple B Enterprises conveyed the property to the appellees by general warranty deed also dated January 20, 1989 and recorded January 24, 1989.

10. On November 13, 1989, eleven months after the property had been conveyed by

deed to appellees, the Bank executed an ex parte affidavit, signed by the Bank only, and entitled "Affidavit of Mutual Mistake" which states that the Bank and Coleman did not intend to release the property by the Bank's full release dated September 28, 1988 (the release being recorded October 18, 1988, under Clerk's File No. L894825 of the Real property records of Harris County, Texas). The affidavit purports to limit the full release to properties other than the property conveyed to appellees and was recorded November 28, 1989.

Appellees argue that the full release of lien from the Bank effectively discharged the 1987 deed of trust and the 1988 deed of trust and that the affidavit of mutual mistake filed fourteen months after the full release was filed was ineffective for any purpose. Appellees further argue that the 1987 deed of trust and the 1988 deed of trust were void because in February, 1985, Coleman received only a quit claim deed from Kjorvestad and then conveyed the same property by warranty deed to Murray in June, 1985. Therefore, appellees argue Coleman had no title to convey as security for the 1987 deed of trust because whatever title he had in 1987, he had previously conveyed to Murray in 1985. Appellant argues that said instruments were not void because Coleman had a 1985 deed of trust from Murray that would be an "interest" in real estate that would have been valid security for the Bank's 1987 deed of trust and the 1988 deed of trust. Appellant further argues that the property was not released by the Bank since it was not specifically included in the description of the property released. We agree with appellees and disagree with appellants as to the release. We find that the Bank's 1988 full release did release the Coleman 1987 deed of trust as well as the Coleman 1988 deed of trust and the Coleman 1986 collateral agreement. We disagree with appellees as to the validity of the Coleman 1987 deed of trust. We find that the Coleman 1987 deed of trust was valid.

■ The "quit claim deed" from Nels R. Kjorvestad to Robert Coleman dated February 14, 1985, conveyed all of the title of the grantor (Kjorvestad) to the property. Since Kjorvestad held fee simple title to the property under a general warranty deed from Coleman, the quit claim deed back to Coleman conveyed *fee title* to Coleman. That is, the *only* interest Kjorvestad held was fee simple absolute which would be effectively conveyed by the instrument. This was obviously the intention of the parties when this quit claim deed was executed as evidenced by the subsequent correction deed from Kjorvestad to Coleman dated January 12, 1987. The said correction deed did not purport to enlarge the title already held. The correction deed ratified the fee title that Kjorvestad intended to convey back to Coleman and added only a covenant of warranty as the omitted item that was intended by the parties to have been in the original deed. *See Fidelity Lumber Co. v. Bendy,* 245 S.W. 981 (Tex.Civ.App.—Beaumont 1922, writ dism'd w.o.j.); 10 Tex.Jur.3d, *Deeds* § 156 (1983).

Coleman then sold the property to Murray in June, 1985, and Murray gave Coleman a note and a deed of trust to additionally secure the vendor's lien for the purchase price of the property. By an instrument dated December 6, 1986, entitled "collateral assignment," Coleman transferred and assigned the deed of trust and note from Murray to the Bank as collateral for Coleman's $200,000.00 note to the Bank dated November 8, 1985, renewed and extended on November 8, 1986. In 1987, Coleman executed the disputed deed of trust and securities agreement, which described the collateral as the property itself, describing it by Lot and Block number. The 1987 deed of trust made no reference to the collateral as being only Murray's note to Coleman, which was secured by a deed of trust and vendor's lien.

■ A deed reserving to grantor an express vendor's lien to secure grantee's payment of the purchase price of the land conveyed will be treated, as between the parties and their privies, as an executory sale contract under which superior legal title to land remains in the grantor until the payment of

the purchase money and the grantee acquires the equitable right to obtain legal title by such payment. *State v. Forest Lawn Lot Owners Ass'n*, 152 Tex. 41, 254 S.W.2d 87 (1953). Coleman retained an express vendor's lien in his deed to Murray which is an interest in real estate that may be assigned. *Cebell v. Hauser*, 112 S.W.2d 285 (Tex.Civ. App.—San Antonio 1937, writ dism'd). Any ownership in property that may be transferred, sold, or conveyed may also be mortgaged or conveyed in trust absent some legal inhibition. *See Bellah v. First Nat'l Bank of Hereford*, 478 S.W.2d 636, 638–39 (Tex.Civ. App.—Amarillo 1972, writ ref'd n.r.e.). Because Coleman's interest could be *transferred, sold, or conveyed*, it was subject to a lien placed thereon.

■ The questioned deed of trust of 1987 was a valid instrument and the 1988 deed of trust which was in renewal and extension of the 1987 deed of trust, was also valid. Coleman had a lienholder's interest in the property when he assigned his note and liens from Murray to the Bank and gave the Bank a security interest in all of Coleman's rights under these instruments. It is obvious from the instruments on file from Coleman to the Bank that it was Coleman's intention and the Bank's intention to renew and extend Coleman's $200,000.00 note to the Bank originally made on November 8, 1985, and enter into a new security agreement and deed of trust as each renewal matured and was again renewed. Appellees cite *McGeorge v. Van Meter*, 163 Tex. 552, 358 S.W.2d 580 (1962) as authority for their assertion that the renewals and extensions of the matured note secured by new deeds of trust effected a merger of the existing deed of trust lien into the new one that was executed to secure the renewal of the note. We agree. The effect of a renewal and extension of an existing note secured by a deed of trust is to incorporate the indebtedness secured into the new deed of trust and note and the holder of such note thereby acquires the rights, powers, and equities of the original owner of the note secured by the existing note and deed of trust. The former deed of trust lien is thus merged with the new. *McGeorge*, 358 S.W.2d at 583–84. Since all existing notes and liens were renewed, extended and merged into the 1988 Deed of Trust, the Bank's full release effectively released *all* its liens in and to the subject property.

■ The ex parte affidavit of the Bank, filed fourteen months after it filed its full release, which purported to alter the duly executed and recorded full release was not effective for any purpose. The affidavit is hearsay and is not proof of the matters therein asserted. This affidavit was recorded eleven months after appellees purchased the property. A purchaser of land is only charged with information contained in instruments of record which are in his chain of title at the time he purchases the property. *Martin v. Marquardt*, 111 S.W.2d 285 (Tex.Civ. App.—San Antonio 1937, writ dism'd).

We find that the full release from the bank released all the obligations of Robert Coleman and that were no liens held by appellant that attached to appellees' property. We overrule appellant's points of error one and two. We further find that there was no error in the judgment of the trial court requiring reversal, but there was error in the judgment as entered which is capable of reformation by this Court. The judgment is modified and reformed to eliminate the provisions declaring the Coleman instruments void and provide only that the instruments were fully released by the Bank. Therefore, the judgment is reformed, in pertinent part, on pages one and two, to read as follows:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Deed of Trust from Robert Coleman to First City Bank of Northline filed on November 9, 1987, at Clerk's File No. L417714 of the Real Property Records of Harris County, Texas, and the Renewal and Extension thereof, the Deed of Trust, Assignment of Rents and Security Agreement, filed April 25, 1988, at Clerk's File No. L632725 of the Real Property Records of Harris County, Texas, were released by virtue of that Full Release of Lien executed by the First City Bank of

Northline and filed for record on October 18, 1988, at Clerk's File No. L894825 of the Real Property Records of Harris County, Texas.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Collateral Assignment from Robert Coleman to First City Bank of Northline, filed on December 8, 1986, at Clerk's File No. K867364 of the Real Property Records of Harris County, Texas, was released by virtue of that Full Release of Lien executed by the First City Bank of Northline and filed for record on October 18, 1988, at Clerk's File No. L894825 of the Real Property Records of Harris County, Texas.

Except as reformed, the trial court judgment is affirmed.